**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SENECA INSURANCE COMPANY, INC., *Plaintiff-Third-Party-Plaintiff-Appellant*, <br><br> v. <br><br> STRANGE LAND, INC.; U.S. BANK NATIONAL ASSOCIATION, *Defendants-Appellees*, <br><br> v. <br><br> BELFOR USA GROUP, INC., DBA Belfor Property Restoration, *Third-Party-Defendant-Appellee.* | No. 15-16011 <br><br> D.C. No. 3:14-cv-00381-LRH-WGC <br><br><br> OPINION |

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Submitted March 17, 2017[*]
San Francisco, California

Filed July 5, 2017

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before:  Kim McLane Wardlaw and Ronald M. Gould,
Circuit Judges, and Edward F. Shea,[**] District Judge.

Opinion by Judge Wardlaw

## SUMMARY[***]

### *Colorado River* Abstention

The panel vacated the district court's order staying an action, pursuant to *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976), against Strange Land, Inc. pending the decision in a parallel state court proceeding; and remanded to the district court for further proceedings.

In July 2014, Seneca Insurance Company, Inc. filed a complaint against Strange Land and U.S. Bank in the instant federal action seeking a declaration of insurance obligations. In October 2014, Belfor USA Group, Inc. filed an action in Nevada state court seeking compensation for its repair work from Strange Land as the property owner and Seneca as the policy issuer.

The panel held that the district court correctly chose to analyze Strange Land's request for abstention in the federal

---

[**] The Honorable Edward F. Shea, Senior United States District Judge for the Eastern District of Washington, sitting by designation.

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

action under the *Colorado River* framework because Seneca sought remedies beyond declaratory judgment. The panel rejected Strange Land's argument that the more lenient abstention test from *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), and *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942), should apply.

The panel evaluated the eight factors in assessing the appropriateness of a *Colorado River* stay or dismissal. The panel held that the district court's application of *Colorado River* abstention was an abuse of its narrow discretion because the case was not "exceptional" so as to warrant disregarding the obligation of a federal court to exercise its jurisdiction.

---

**COUNSEL**

John P. Skalak, Wilson Elser Moskowitz Edelman & Dicker LLP, Las Vegas, Nevada, for Plaintiff-Third-Party-Plaintiff-Appellant.

William R. Ginn, Patrick R. Leverty, and Vernon E. Leverty, Leverty & Associates Law CHTD, Reno, Nevada, for Defendant-Appellee Strange Land, Inc.

---

## OPINION

WARDLAW, Circuit Judge:

Seneca Insurance Company, Inc. ("Seneca") appeals the district court's order staying its action against Strange Land, Inc. ("Strange Land") pending the decision in a parallel state court proceeding. In situations of concurrent state and federal jurisdiction over a controversy, a district court must exercise its jurisdiction unless "exceptional circumstances . . . serv[ing] an important countervailing interest" are present. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). The district court examined several *Colorado River* factors and concluded that a stay of the federal proceedings was justified "for the sake of wise judicial administration." We disagree, vacate the stay order, and remand to the district court for further proceedings.

## I.

We recount only the factual and procedural history of this insurance dispute necessary to consider the district court's abstention order. Strange Land owns a building in Reno, Nevada. In 2013, Strange Land obtained a commercial insurance policy from Seneca to cover the property for risk of loss up to $2 million. U.S. Bank, National Association ("U.S. Bank") holds a mortgage on the property and is an additional loss payee on the policy. Between May 4, 2013 and February 25, 2014, Strange Land made four property damage claims under its Seneca policy. Belfor USA Group, Inc. ("Belfor") repaired the property damage; in return, Strange Land promised that Belfor would be entitled to the insurance proceeds. After invoicing Strange Land for its work and failing to receive any compensation for the repairs, Belfor

caused a Notice of Lien to be recorded on the property on May 16, 2014. Belfor alleges that it notified Seneca that Strange Land had assigned to Belfor its rights to the insurance proceeds, though Seneca asserts that it was unaware of Belfor's request for payment. Seneca's federal complaint alleges that, upon investigating Strange Land's claims, Seneca concluded that Strange Land had made material misrepresentations in its policy application. Therefore Seneca sought to rescind the policy and disclaimed responsibility for the claims. According to Belfor, Seneca rejected Belfor's request for reimbursement.

On July 21, 2014, Seneca filed a complaint against Strange Land and U.S. Bank in the instant suit (the "Federal Action"). Seneca described the "Nature of [the] Action" as "an action for declaratory judgment pursuant to 28 U.S.C. section 2201 and 28 U.S.C. section 2202, to determine the rights and duties" among the parties. Seneca sought, *inter alia*, a "declaration" rescinding the policy because of Strange Land's misrepresentations, a judgment of indemnity against Strange Land, and damages exceeding $75,000 "for recoupment of monies wrongfully paid to defendant on the first property claim."

On October 10, 2014, Belfor filed an action in the Second Judicial District Court in Nevada (the "State Action"), seeking compensation for its repair work from Strange Land as the property owner and Seneca as the policy issuer. In response, Seneca alleged its affirmative defenses, crossclaims, and counterclaims in the State Action. Seneca also filed a third-party complaint for interpleader and declaratory relief against Belfor in the Federal Action and moved to dismiss or stay the State Action in light of the pending Federal Action. On February 18, 2015, Strange Land

filed a request for abstention in the Federal Action, which the district court granted on April 22, 2015. Seneca timely appealed.

## II.

We have jurisdiction to review a *Colorado River* stay order pursuant to 28 U.S.C. § 1291. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 9–13 (1983). "Whether the facts of a particular case conform to the requirements for a *Colorado River* stay or dismissal is a question of law which we review de novo." *Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1032 (9th Cir. 2005). If we conclude that the *Colorado River* requirements have been met, we then review for abuse of discretion the district court's decision to stay or dismiss the action. *See R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 973 (9th Cir. 2011). "[D]iscretion must be exercised within the narrow and specific limits prescribed by the [*Colorado River*] doctrine." *Id.* (second alteration in original).

## III.

We first consider Strange Land's argument that the more lenient abstention test from *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), and *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942), should apply because Seneca's suit seeks only declaratory relief. *See Brillhart*, 316 U.S. at 495 ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."). So long as the suit seeks more than merely declaratory relief, however, the entire

action should be analyzed under the *Colorado River* framework. "[I]f the same action contains claims for both monetary and declaratory relief, the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief." *R.R. St.*, 656 F.3d at 976–77 (internal quotation marks omitted). To determine whether a suit exclusively seeks declaratory relief, we ask "whether there are claims in the case that exist independent of any request for purely declaratory relief, that is, claims that would continue to exist if the request for a declaration simply dropped from the case." *Snodgrass v. Provident Life & Accident Ins. Co.*, 147 F.3d 1163, 1167–68 (9th Cir. 1998).

The district court correctly chose to analyze the abstention motion under the *Colorado River* framework. It is true, as Strange Land notes, that Seneca's complaints describe the Federal Action as "an action for declaratory judgment pursuant to 28 U.S.C. section 2201 and 28 U.S.C. section 2202, to determine the rights and duties" between Seneca and Strange Land. Yet in its prayers for relief against Strange Land in the original and amended complaints, Seneca has consistently requested "a declaration rescinding the policy of property insurance," "a declaration of the Court voiding the policy . . . based upon breach of contract and material misrepresentations," and "damages, in an amount exceeding $75,000, for recoupment of monies paid to defendant on the first property claim."

Seneca's filings thus have unfailingly sought damages, bringing its suit squarely within the *Colorado River* framework. Moreover, though certain of the prayers for relief in the Federal Action have been framed as seeking "declarations" by the court, Seneca is in fact pursuing rescission of the contract based on Strange Land's alleged

misrepresentations—thereby *altering* the relationship of the parties—and not simply requesting that the court "announce[] the rights and obligations of the parties." *See* Robert S. Thompson et al., *Remedies: Damages, Equity, and Restitution* 10 (4th ed. 2009); *see also* James M. Fischer, *Understanding Remedies* 6 (3d ed. 2014) ("The essential feature of declaratory relief is that it does not compel an immediate, specific obligation to do something. . . . The full effect of the remedy lies in its educative value and the further remedy of a follow up action to enforce the rights, duties, and obligations recognized by the court . . . ."). Those prayers for "declaratory" relief, in addition to the explicit request for damages, therefore also seek non-declaratory remedies. Even if the request for a declaration to determine the rights and duties of the parties dropped out of the lawsuit, the other remedies sought would afford an independent basis for the Federal Action. Because Seneca seeks remedies beyond declaratory judgment, the district court correctly applied the *Colorado River* standard.

## IV.

We next consider whether the district court properly stayed the Federal Action pending resolution of the State Action based on *Colorado River*. "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colo. River*, 424 U.S. at 813. Generally "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . ." *Id.* at 817 (internal quotation marks omitted). The Supreme Court has emphasized that the federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," including in cases involving parallel state litigation. *Id.* "Abdication of the obligation to decide cases can be

justified . . . only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Id.* at 813 (internal quotation marks omitted). Under "exceedingly rare" circumstances, *Smith*, 418 F.3d at 1033, "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," may counsel in favor of abstention, *Colo. River*, 424 U.S. at 817 (alteration omitted) (internal quotation marks omitted).

*Colorado River* and its progeny provide a multi-pronged test for determining whether "exceptional circumstances" exist warranting federal abstention from concurrent federal and state proceedings. We evaluate eight factors in assessing the appropriateness of a *Colorado River* stay or dismissal:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*R.R. St.*, 656 F.3d at 978–79. These factors are not a "mechanical checklist"; indeed, some may not have any applicability to a case. *Cone Mem'l Hosp.*, 460 U.S. at 16. Rather, as instructed by the Supreme Court, we examine them

in "a pragmatic, flexible manner with a view to the realities of the case at hand." *Id.* at 21. Moreover, we must carefully balance the important factors, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* at 16. The underlying principle guiding this review is a strong presumption against federal abstention: "[O]ur task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Id.* at 25–26. "Any doubt as to whether a factor exists should be resolved against a stay, not in favor of one." *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990). We address in turn each *Colorado River* factor as it applies to this case.[1]

## A.  *Jurisdiction over a res.*

The district court concluded that the first *Colorado River* factor, whether either court was the first to assert jurisdiction over property at stake, "is neutral because neither court has asserted such jurisdiction." Although Belfor has recorded a notice of lien on the property and lien priority as to litigants other than Seneca and Strange Land may be an issue in the State Action, neither the federal nor the state court has assumed jurisdiction over any property the ownership of which is in dispute. Indeed, the concerns that animate this factor are not implicated here because there is no possibility that the parallel proceedings will result in inconsistent

---

[1] Because the district court and the parties agreed that the relative convenience of the state and federal courts is not implicated, we do not address that factor.

dispositions of a single res.  *See, e.g.*, *Colo. River*, 424 U.S. at 819 ("[T]he concern in such instances is with avoiding the generation of additional litigation through permitting inconsistent dispositions of property."); *see also Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964); *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 467 (1939).  Any disposition of the property in the State Action will have no bearing on the resolution of the Federal Action, where Belfor has not raised its lien priority claim.  As such, we agree with the district court that this *Colorado River* factor is neutral.

## B.  *Avoidance of piecemeal litigation.*

A substantial factor in the *Colorado River* analysis is whether there are special concerns associated with resolving the issues in a piecemeal fashion via parallel proceedings.  "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results."    *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988).  A general preference for avoiding piecemeal litigation is insufficient to warrant abstention, however.  Any case in which *Colorado River* is implicated will inevitably involve the possibility of "conflicting results, piecemeal litigation, and some duplication of judicial efforts," which are the "unavoidable price of preserving access to . . . federal relief." *Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193, 1195 (9th Cir. 1991) (alteration in original) (internal quotation marks omitted).  Instead, there must be exceptional circumstances present that demonstrate that piecemeal litigation would be particularly problematic. *See Madonna*, 914 F.2d at 1369 ("A correct evaluation of this factor involves considering whether exceptional circumstances exist which justify special concern about

piecemeal litigation. . . . This case involves ordinary contract and tort issues and is thus unlike *Colorado River* where important real property rights were at stake and where there was a substantial danger of inconsistent judgments."). *Colorado River* itself involved multi-state regulation of water rights in the Southwest, where water remains scarce, such that inconsistent dispositions of those rights could trigger further litigation. *See Colo. River*, 424 U.S. 819–20 ("The clear federal policy evinced by [the McCarran Amendment] is the avoidance of piecemeal adjudication of water rights in a river system.").[2]

The district court here reasoned that because "this case involves multiple defendants, numerous claims, and cross-claims, that all present complex state tort and insurance issues," the desire to avoid piecemeal litigation "weighs in favor of abstention." The district court misconstrued the piecemeal litigation factor because it failed to identify any special concern counseling in favor of federal abstention, such as a "clear federal policy" of avoiding "piecemeal adjudication of water rights" expressed via federal legislation "recogniz[ing] the availability of comprehensive state systems for adjudication of water rights." *Id.* at 819. Multiple defendants, claims, and cross-claims are routine in adjudications of tort and insurance disputes—they are the stuff of diversity jurisdiction. Nothing about this dispute

---

[2] The McCarran Amendment, 43 U.S.C. § 666, waived federal sovereign immunity in suits adjudicating the ownership or administration of water rights. The Supreme Court interpreted the amendment to indicate a congressional policy recognizing "the availability of comprehensive state systems for adjudication of water rights as the means for achieving" the goal of avoiding piecemeal adjudication of water rights in a river system. *Colo. River*, 424 U.S. at 819.

evinces a special or important rationale or legislative preference for resolving these issues in a single proceeding.

## C.  The order in which the forums obtained jurisdiction.

In determining the order in which the state and federal courts obtained jurisdiction, district courts are instructed not simply to compare filing dates, but to analyze the progress made in each case "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Cone Mem'l Hosp.*, 460 U.S. at 21. The district court is well positioned to understand the relative progress of each case in this practical way. Here, the district court concluded that, "[b]ecause neither case has progressed significantly further than the other, and the federal action was filed more than two months prior to the state action, this factor weighs against abstention." There was significant activity in each case by the time the district court reviewed the abstention motion, but neither court had resolved any foundational legal claims. As a result, we agree with the district court's conclusion that the cases had progressed equivalent amounts, such that this factor does not weigh in favor of abstention. Strange Land's arguments to the contrary—in which it contends that the State Action was the "first filed" because Seneca amended its original complaint and that this weighs heavily in favor of abstention—lack merit.

## D.  The rule of decision.

Under *Colorado River*, we consider "whether federal law or state law provides the rule of decision on the merits" (the "rule of decision" factor). *R.R. St.*, 656 F.3d at 978. The "presence of federal-law issues must always be a major consideration weighing *against* surrender" of jurisdiction, but

"the presence of state-law issues may weigh in favor of that surrender" only "in some rare circumstances." *Cone Mem'l Hosp.*, 460 U.S. at 26 (emphasis added); *see also Meredith v. City of Winter Haven*, 320 U.S. 228, 236 (1943) ("Congress having adopted the policy of opening the federal courts to suitors in all diversity cases involving the jurisdictional amount, we can discern in its action no recognition of a policy which would exclude cases from the jurisdiction merely because they involve state law or because the law is uncertain or difficult to determine."). That state law provides the rule of decision supports abstention only when the state law questions are themselves complex and difficult issues better resolved by a state court; it is not enough that a state law case is complex because it involves numerous parties or claims. *See R.R. St.*, 656 F.3d at 980–81 (concluding that the source of law factor is "neutral" where the complexity of the action "stems from the number of policies and insurers, not from the type of [state] law involved in the action"). Cases implicating only "routine issues of state law—misrepresentation, breach of fiduciary duty, and breach of contract—which the district court is fully capable of deciding" do not entail "rare circumstances" counseling in favor of abstention. *Madonna*, 914 F.2d at 1370.

The district court concluded that the rule of decision factor "weighs heavily in favor of abstention" because "[a]ll claims in this case are brought pursuant to state law." As discussed above, the court also noted elsewhere that "this case involves multiple defendants, numerous claims, and cross-claims, that all present complex state tort and insurance issues." In so doing, the district court disregarded our precedent requiring "rare circumstances" for this factor to weigh in favor of abstention and failed to explain why the relevant legal claims are "complex." We do not find "rare

circumstances" in this litigation.   Rather, this is a straightforward insurance dispute through which an insurer seeks declaratory judgment, equitable relief, and damages against its insured, while a third-party vendor seeks from several parties compensation for past repair work.  As in *Madonna* and *R.R. Street*, the claims ultimately boil down to arguments about misrepresentation, fraudulent inducement, detrimental reliance, breach of contract, and rescission, none of which raises the "rare circumstances" required for the rule of decision factor to weigh toward abstention.[3]

## E.   *Adequacy of the state forum and parallelism of the suits.*

Under *Colorado River*, we consider both "whether the state court proceedings can adequately protect the rights of the federal litigants" (the "adequacy" factor) and "whether the state court proceedings will resolve all issues before the

---

[3] Strange Land cites the McCarran-Ferguson Act, 15 U.S.C. §§ 1011 *et seq.*, as further support for the district court's abstention decision.  We agree that this act "was an effort by Congress to protect states' primary regulatory role over the insurance industry," *Elliot v. Fortis Benefits Ins. Co.*, 337 F.3d 1138, 1142 n.3 (9th Cir. 2003), and that it "includes an express reverse preemption provision, 15 U.S.C. § 1012(b)," *Hawthorne Savings F.S.B. v. Reliance Ins. Co. of Ill.*, 421 F.3d 835, 842 (9th Cir. 2005).  Yet Strange Land offers no support for its suggestion that states' primary authority to regulate the business of insurance affects federal courts' ability to evaluate insurance disputes arising under state law.  Strange Land's argument amounts to an assertion that federal courts cannot properly apply state insurance law, something federal courts routinely do.  This argument lacks merit.  *Cf. id.* at 841–44, 848–49 ("[T]he policy of the McCarran-Ferguson Act was to leave the regulation of insurers to the states[;] it did not intend to divest federal courts of the right to apply state law regarding the regulation of insurers in appropriate diversity proceedings." (quoting *Grimes v. Crown Life Ins. Co.*, 857 F.2d 699, 702 (10th Cir.1988))).

federal court" (the "parallelism" factor). *See R.R. St.*, 656 F.3d at 978–79. The adequacy factor looks to whether the state court might be unable to enforce federal rights. *See, e.g.*, *Cone Mem'l Hosp.*, 460 U.S. at 26–27 (finding state proceedings might be inadequate because it was unclear whether state courts would compel arbitration under the Federal Arbitration Act); *Madonna*, 914 F.2d at 1370 ("This factor involves the *state* court's adequacy to protect *federal* rights, not the federal court's adequacy to protect state rights." (citing *Cone Mem'l Hosp.*, 460 U.S. at 26)). The parallelism factor provides that "the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes a *Colorado River* stay or dismissal." *R.R. St.*, 656 F.3d at 982 (internal quotation marks omitted); *see also Cone Mem'l Hosp.*, 460 U.S. at 28 ("When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all."). Though "exact parallelism . . . is not required," substantial similarity of claims is necessary before abstention is available. *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989).

In short, the adequacy factor pertains to whether there is an impediment to the state court protecting the litigants' federal rights, while the parallelism factor considers whether the parallel proceedings address "substantially similar" claims. Each factor is more relevant when it counsels against abstention, because while inadequacy of the state forum or insufficient parallelism may preclude abstention, the alternatives never compel abstention. *See Cone Mem'l Hosp.*, 460 U.S. at 25–26; *Colo. River*, 424 U.S. at 817.

The district court apparently analyzed these factors in the same section of the order, titled, "Whether the State Proceeding is Adequate to Protect the Parties' Rights." This section describes the parties and claims being raised in each forum before explaining that "although both forums are likely to adequately protect the rights of the parties, the state court action is most likely to promote complete and prompt resolution of the issues between the parties" and "Seneca simply has not raised any reasons why the state court action would not protect its rights." The district court concluded that "[t]his factor therefore weighs in favor of abstention." Yet sufficiently similar claims are a necessary precondition to *Colorado River* abstention and should not, absent more, add weight to the balance in favor of abstention. The district court thus read the "parallelism" factor incorrectly: Parallelism is necessary but not sufficient to counsel in favor of abstention. Both the adequacy and parallelism factors here are neutral, as neither provides "the clearest of justifications" warranting the surrender of federal jurisdiction. *Cone Mem'l Hosp.*, 460 U.S. at 25–26.

## F. *The avoidance of forum shopping.*

When evaluating forum shopping under *Colorado River*, we consider whether either party improperly sought more favorable rules in its choice of forum or pursued suit in a new forum after facing setbacks in the original proceeding. *See Nakash*, 882 F.2d at 1417 (finding forum shopping where, after three-and-a-half years of litigation in a case that was progressing to its detriment, one party sought a "new forum for [its] claims"); *Am. Int'l Underwriters*, 843 F.2d at 1259 (finding forum shopping where, after two-and-a-half years, a party "abandon[ed] its state court case solely because it believe[d] that the Federal Rules of Evidence [we]re more

favorable to it than the state evidentiary rules"). It typically does not constitute forum shopping where a party "acted within his rights in filing a suit in the forum of his choice," *Madonna*, 914 F.2d at 1371, even where "[t]he chronology of events suggests that both parties took a somewhat opportunistic approach to th[e] litigation," *R.R. St.*, 656 F.3d at 981. *See also id.* at 982 ("[W]e are cautious about labeling as 'forum shopping' a plaintiff's desire to bring previously unasserted claims in federal court.").

The record does not reflect that either party engaged in improper forum shopping. Nothing indicates that either side sought to manipulate the litigation or behaved vexatiously to wind up in the forum of its choosing. Both parties' arguments to the contrary lack merit. Seneca suggests, without substantiation, that the opposing parties are colluding to delay the Federal Action and accelerate the State Action. But the fact that various parties to the Federal Action have tried to dismiss Seneca's complaint does not indicate abuse of the litigation process; indeed, Seneca amended its complaint repeatedly in response to those motions to dismiss, suggesting that the motions were at least worthy of response.

Strange Land similarly makes several meritless arguments, some of which are contradictory, in support of its view that Seneca has improperly forum shopped. If credited, Strange Land's arguments would suggest that Seneca seeks to litigate exclusively in both federal and state courts. Strange Land initially describes Seneca's Federal Action as an "offensive reactive suit," indicating that Seneca filed in federal court because it anticipated being sued in a nonremovable state court action. But this argument is credible only if a state court suit Strange Land filed against Seneca would have been nonremovable. At the beginning of

the litigation, the parties Seneca identified and brought into the litigation were Strange Land (incorporated and headquartered in Nevada), U.S. Bank (incorporated and headquartered in California), and itself (incorporated and headquartered in New York). Even assuming that Seneca also deemed Belfor (incorporated in Colorado and headquartered in Michigan) to be a necessary party, any insurance recovery suit Strange Land might have brought against Seneca in Nevada state court would have been removable by Seneca to Nevada federal court. There is thus no reason to think Seneca filed the Federal Action to avoid being brought into a nonremovable state court suit.

At the same time, Strange Land argues that Seneca's choice to raise claims in the State Action constitutes forum shopping because Seneca prefers not to be held to the higher federal pleading standard. If Seneca preferred to be in state court and was "forum shopping" to get there, it would presumably have filed its original action in state court; not requested that the state court postpone its proceedings; and not opposed federal abstention. Such behavior would be irrational if Seneca's goal was to wind up in state court under more favorable pleading standards. Thus, neither party has a viable claim that the other engaged in forum shopping.

## V.

"To determine whether a [*Colorado River*] stay is warranted, the relevant factors must be balanced, with the balance heavily weighted in favor of the exercise of jurisdiction." *Madonna*, 914 F.2d at 1372 (internal quotation marks omitted). Most of the *Colorado River* factors in this case are neutral or favor the exercise of jurisdiction by the district court. The reasons that the district court offered to

justify abstention—that the parallel proceedings will involve piecemeal disposition of the issues, that state law provides the rule of decision, and that the state proceeding is better suited to promote resolution of all the issues among the parties—are likely to be present in nearly every instance of concurrent state and federal suits where state law provides the rule of decision. These concerns "do not create the 'exceptional circumstances' required for *Colorado River* deference because they are present to this degree in many instances of parallel federal-state litigation." *Id.*; *see also Neuchatel Swiss Gen. Ins. Co.*, 925 F.2d at 1195. The Federal and State Actions are parallel disputes occurring in multiple fora and concerning substantially the same issues. Nothing about this case is "exceptional" so as to warrant disregarding the "virtually unflagging obligation" of a federal court to exercise its jurisdiction. The district court's application of *Colorado River* was an abuse of its narrow discretion, essentially transforming the strong presumption against abstention into a presumption in favor of abstention where state law issues predominate. We therefore **VACATE** the stay order and **REMAND** to the district court for further proceedings.

**VACATED; REMANDED.**