**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| MENDOCINO RAILWAY, a California corporation, | No. 23-15857 |
| *Plaintiff-Appellant*, | D.C. No. 4:22-cv-04597-JST |
| v. | |
| JACK AINSWORTH, in his official capacity as Executive Director of the California Coastal Commission; CITY OF FORT BRAGG, a California municipal corporation, | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Northern District of California
Jon S. Tigar, District Judge, Presiding

Argued and Submitted May 15, 2024
San Francisco, California

Filed August 29, 2024

Before: Sidney R. Thomas, Consuelo M. Callahan, and
Gabriel P. Sanchez, Circuit Judges.

Opinion by Judge Callahan

# SUMMARY[*]

## *Colorado River* Doctrine

The panel affirmed the district court's judgment dismissing Mendocino Railway's federal lawsuit against the City of Fort Bragg and the California Coastal Commission under the *Colorado River* doctrine, which authorizes federal courts to refrain from exercising jurisdiction where there are parallel state court proceedings.

The Railway has resisted the City's and Commission's efforts to regulate the use and maintenance of Railway properties in the City. The City filed a state court action seeking declaratory and injunctive relief requiring the Railway to comply with local laws regulating the use and maintenance of Railway properties in the City. The Railway asserted that the declaratory and injunctive relief sought by the City were barred by state and federal preemption. The Railway subsequently filed this federal action, seeking a declaration that the actions of the City and the Commission to regulate the Railway were preempted, and an injunction preventing the City and the Commission from interfering with the Railway's operations.

Applying the eight-factor *Colorado River* balancing test, the panel held that the district court did not abuse its discretion in dismissing the federal action. Only the consideration that federal law provides the rule of decision weighs against dismissal of the federal action, but not substantially so given that the state court has concurrent

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

jurisdiction to adjudicate federal preemption issues. Neither an inadequate state court forum nor insufficiently parallel proceedings, which preclude the use of a *Colorado River* dismissal, are present here. The forum shopping and piecemeal litigation considerations strongly favor dismissal, and the order in which the forums obtained jurisdiction also supports that outcome. The remaining factors are neutral. On balance, therefore, this case meets the requirements for a *Colorado River* dismissal.

**COUNSEL**

Paul J. Beard, II (argued), Pierson Ferdinand LLP, Los Angeles, California, for Plaintiff-Appellant.

Patrick Tuck (argued), Deputy Attorney General, Public Rights/ Land Use and Conservation; David G. Alderson, Supervising Deputy Attorney General; Daniel A. Olivas, Senior Assistant Attorney General; Rob Bonta, Attorney General of California; California Department of Justice, Oakland, California; Krista MacNevin Jee (argued), Jones & Mayer, Fullerton, California; for Defendants-Appellees.

**OPINION**

CALLAHAN, Circuit Judge:

Mendocino Railway ("Railway") has resisted efforts by the City of Fort Bragg ("City") and the California Coastal Commission ("Commission") to regulate the use and maintenance of Railway properties in the City. After the City sued the Railway in state court, the Railway responded by suing the City and the Commission in federal court. The Railway appeals the district court's dismissal of its federal case under the *Colorado River* doctrine, which authorizes federal courts to refrain from exercising jurisdiction where there are parallel state court proceedings. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

**I.**

**A.**

The Railway operates a railroad line between Fort Bragg, California and Willits, California, colloquially known as the "Skunk Train."[1] Related to its operation of the railroad, the Railway owns multiple structures and properties within the City, and since 2019 has acquired a total of approximately 300 acres of land adjacent to the Fort Bragg railway station. The Railway has undertaken a variety of improvements, repairs, and maintenance work related to the further development of this property.

---

[1] The railroad line was originally built in 1885, and historically has operated tourist and non-tourist passenger services as well as freight services. The Fort Bragg station is a fully developed rail facility.

Starting in 2017, the City began discussions with the Railway regarding the repair of dilapidated structures on Railway property and the Railway's purported failure to obtain proper permits for its use of the property. This includes permits under the California Coastal Act of 1976 ("Coastal Act"), Cal. Pub. Res. Code § 30000 *et seq.*, which applies to development in the coastal zone and which the City implements through its local coastal program ("LCP"). The Railway refused to obtain any permits, arguing that as a public utility it was not subject to local regulation.

The Railway was also in discussions with the Commission during this time. The Commission is the state entity that administers the Coastal Act, including overseeing LCPs, issuing permits, and pursuing administrative and civil enforcement actions. Additionally, the Coastal Zone Management Act ("CZMA"), 16 U.S.C. § 1451 *et seq.*, grants the Commission authority to review certain federal agency actions to ensure consistency with the Coastal Act. *See id.* § 1456. The Commission sent letters to the Railway in June and December of 2019 regarding the Commission's permitting jurisdiction, requesting information on the Railway's development activities, and discussing the possible need for a permit under the Coastal Act or a consistency determination under the CZMA.[2]

### B.

In October 2021, the City sued the Railway in Mendocino County Superior Court. *City of Fort Bragg v. Mendocino Railway*, Case No. 21CV00850 (the "State

---

[2] We grant the Railway's requests for judicial notice of the state court docket (Exhibit 1) and the December 2019 letter from the Commission to the Railway (Exhibit 2).

Action"). The City's complaint seeks a declaration that the Railway is not a public utility and therefore is "subject to the City's ordinances, regulations, codes, local jurisdiction, local control and local police power and other City authority." The City also seeks an injunction ordering the Railway to comply with local laws. The Railway demurred, arguing the state court lacked subject matter jurisdiction given the Railway's public utility status and that City regulation was federally preempted by the Interstate Commerce Commission Termination Act of 1995 ("ICCTA") because of the Railway's status as a federally recognized railroad. The state court overruled the demurrer on April 28, 2022, finding the Railway's argument that federal law preempted "all" local laws and regulations to be overly broad, and noting the issue was not appropriate to decide on demurrer given the fact-bound nature of the preemption inquiry.

After unsuccessful petitions to the California Court of Appeal and the California Supreme Court,[3] the Railway filed its answer in the State Action on June 24, 2022. The Railway asserted preemption as an affirmative defense, stating that "[t]he declaratory and injunctive relief sought by [the City] are barred by state and federal preemption . . . because Defendant is a [California Public Utilities Commission]-regulated public utility and a railroad within the jurisdiction of the [federal Surface Transportation Board]."

---

[3] We grant the Commission's request for judicial notice of the Commission's complaint in intervention (Exhibit A) and the California Supreme Court docket denying the petition for review (Exhibit B), and deny the request as to the City and Commission motions to remand the State Action (Exhibits C and D), and the order granting the remand (Exhibit E).

In July 2022, the City requested that the Commission assume responsibility for enforcement of the Coastal Act and the City's LCP against the Railway. The Commission agreed and sent a Notice of Violation to the Railway on August 10, 2022. The notice asserted that the Railway was undertaking unpermitted development which required a coastal development permit and might also require a consistency determination. It outlined the potential civil fines and administrative penalties that could be assessed against the Railway should it fail to obtain the proper permits.

On August 9, 2022 (the day before the Commission sent the notice), the Railway filed the federal action underlying this appeal in the United States District Court for the Northern District of California (the "Federal Action"). The Railway sued the City and Jack Ainsworth in his official capacity as Executive Director of the Commission. The Railway's complaint references a variety of actions it has pursued or will pursue related to maintenance and other work on its railway-related properties. The Railway seeks a declaration that "the actions of the Commission and the City to regulate [the Railway's] operations, practices and facilities are preempted under 49 U.S.C. § 10501(b)"; that the Railway's "activities are subject to the [Surface Transportation Board's] exclusive jurisdiction;" and that the Railway "has the right under the ICCTA to undertake any and all rail-related activities within the coastal zone . . . without preclearance or approval from the Commission or the City." The Railway also seeks an injunction preventing the City and the Commission from interfering with its operations, including by imposing "any land-use permitting or other preclearance requirement." It further states it has

not sought, and does not intend to seek, a permit from either the City or the Commission.

Subsequently, back in state court, the Railway moved to disqualify the judge who had overruled the demurrer, and the motion was denied.  The Commission moved to intervene in the State Action on October 6, 2022.  The Commission's complaint-in-intervention references the Railway's maintenance work "as well as other activities undertaken by the Railway."  It notes the Railway's contention that federal law preempts the permitting requirements of the Coastal Act, and asks the state court to declare that the Coastal Act and LCP apply to the Railway's actions and "are not preempted by any state or federal law."  In addition, the Commission's complaint seeks civil penalties and exemplary damages for the Railway's alleged violations of the Coastal Act.

On October 20, 2022, the Railway removed the State Action to the United States District Court for the Northern District of California, invoking federal question jurisdiction on the grounds that the State Action required resolution of federal questions arising under the ICCTA.  The City and the Commission moved to remand the action to state court, and on May 11, 2023, the district court granted the motion.[4]

Meanwhile, the Commission and the City filed a joint motion to dismiss the Federal Action based on, *inter alia*, the *Colorado River* doctrine.  On May 12, 2023, the district court granted the joint motion, and the Railway filed a timely notice of appeal.

---

[4] Judge Tigar was assigned to both the Federal Action as well as the removed State Action.

## II.

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. In *Colorado River*, the Supreme Court recognized that, in exceptional circumstances, "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" can support a stay or dismissal of federal litigation in favor of parallel state proceedings. *Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 836 (9th Cir. 2023) (citing *Colorado River*, 424 U.S. at 813, 817 (internal quotations and citations omitted)).[5] However, a stay of federal proceedings in favor of state proceedings "is the exception, not the rule." *Colorado River*, 424 U.S. at 813. "Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* at 817. (internal quotation omitted).

Our review of a *Colorado River* dismissal proceeds in two steps. First, we review *de novo* whether the facts of a

---

[5] Generally, a stay rather than a dismissal is appropriate under *Colorado River* as a stay ensures the federal forum will remain available if needed. *See Montanore Mins. Corp. v. Bakie,* 867 F.3d 1160, 1166 (9th Cir. 2017). As recognized by the district court, however, "*Colorado River* itself involved dismissal of a federal action." The district court here determined dismissal was appropriate given "the strength of the factors and the degree to which their balance tips sharply in [the City and Commission's] favor." The Railway does not raise this issue on appeal, so we decline to consider it here. *See R.R. Street & Co. v. Transport Ins. Co.*, 656 F.3d 966, 978 n.8 (9th Cir. 2011) (affirming a *Colorado River* dismissal and declining to address the stay-versus-dismissal issue when it was not raised on appeal).

particular case meet the requirements for a *Colorado River* dismissal. *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 840 (9th Cir. 2017). Second, if the requirements are met, we review for abuse of discretion the district court's decision to dismiss the case. *Id.* "The underlying principle guiding this review is a strong presumption against federal abstention." *Id.* at 842.

After determining there are concurrent state and federal court proceedings involving the same matter (as there are here), we use an eight-factor balancing test to determine if a *Colorado River* stay or dismissal is appropriate. We consider:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*R.R. Street & Co. v. Transport Ins. Co.*, 656 F.3d 966, 978–79 (9th Cir. 2011). These factors are not applied as a "mechanical checklist," but rather in "a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 21 (1983). "[S]ome factors may weigh for or

against the exercise of jurisdiction while others primarily serve as a bar to stay or dismissal." *R.R. Street*, 656 F.3d at 979. "Any doubt as to whether a factor exists should be resolved against a stay" or dismissal. *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990).

## A.

We agree with the parties and the district court that the first factor of jurisdiction over property at stake is inapplicable given there is no specific property in dispute. *See R.R. Street*, 656 F.3d at 979. We also agree that the second factor addressing inconvenience of the federal forum is neutral given the state and federal courthouses are less than 200 miles apart. *See Montanore*, 867 F.3d at 1167 (treating a distance of 200 miles as neutral); *Travelers*, 912 F.3d at 1368 (finding 200 miles "not sufficiently great that this factor points toward abstention").[6]

## B.

The third factor focuses on piecemeal litigation. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988). The district court found this factor favored dismissal given "the issue of federal preemption under the ICCTA is squarely before the state court" and federal

---

[6] We grant the Railway's request for judicial notice of statements of information for the Railway's business filed with the California Secretary of State (Exhibits 3 and 4). We deny the Railway's request for judicial notice of emails exchanged between the Commission and the Federal Railway Administration (Exhibit 5) as well as emails between the Commission and the Railway (Exhibit 6), and the Commission's request for judicial notice of the Commission's public hearing notice.

adjudication of the claim would "necessarily duplicate the state court's efforts and risk the possibility of . . . different results."

Some of our cases have noted that the mere potential for piecemeal litigation is not sufficient on its own to warrant a stay. *See, e.g.*, *Seneca*, 862 F.3d at 842–43 ("A general preference for avoiding piecemeal litigation is insufficient . . . .   Instead, there must be exceptional circumstances present that demonstrate that piecemeal litigation would be particularly problematic."); *Travelers*, 914 F.2d at 1369 (finding no exceptional circumstances in an insurance dispute dealing with ordinary contract and tort issues).   However, we have also found the potential for piecemeal litigation to favor a stay when concurrent cases would resolve common questions that could result in "waste [of] judicial resources and cause confusion in the continuing disputes between the parties."  *See, e.g.*, *Ernest Bock*, 76 F.4th at 837 (citing *R.R. Street*, 656 F.3d at 979–80); *Montanore*, 867 F.3d at 1168 (finding this factor favored a stay when the same issue was present in both cases and "crucial in both proceedings," leading to duplication of judicial effort and arguably conflicting results).

We agree with the district court that this factor weighs in favor of dismissal.  Although the State Action includes state law claims, both it and the Federal Action squarely raise the ICCTA preemption issue which the respective courts will be required to address.   Given the almost guaranteed duplication of judicial effort on the preemption question and the possibility of contradictory outcomes, the potential for piecemeal litigation supports dismissal. *See Ernest Bock*, 76 F.4th at 837.

## C.

The district court also found dismissal supported by the fourth factor, the order in which the forums gained jurisdiction, because the State Action was filed first and had progressed further than the Federal Action. This factor considers not only the filing dates of each action, but also "the progress made in each case 'in a pragmatic, flexible manner with a view to the realities of the case at hand.'" *Seneca*, 862 F.3d at 843 (citing *Moses H. Cone*, 460 U.S. at 21). When a state action has been progressing for multiple years with extensive discovery, substantive motions, orders deciding multiple issues, or interlocutory appeals, this factor favors abstention. *See Montanore*, 867 F.3d at 1168; *see also R.R. Street*, 656 F.3d at 980 (finding significant progress weighing in favor of a stay when the state court had interpreted provisions of a contract, conducted discovery, scheduled phased litigation, and issued an order concerning foundational legal matters).

Although the State Action was filed first in time, it preceded the Federal Action by less than a year, which is less time than other cases have found to be significant. *See, e.g.*, *Montanore*, 867 F.3d at 1168 (state court litigation had been underway for six years). Additionally, while the State Action has moved beyond the pleadings stage, it does not appear that the state court has resolved any "foundational legal claims" but rather decided the issues were inappropriate for decision on demurrer. At the time the Railway filed the Federal Action, there had not been any discovery, and no trial date had been set. Although we do not give this factor as much weight as the district court appears to have done, we agree that this factor favors dismissal.

### D.

On the fifth factor, all agree that the Federal Action is governed by federal statute and federal preemption law as the ICCTA determines whether the Railway falls within the scope of the statute's preemption clause. *See* 49 U.S.C. §§ 10102, 10501(b). "[T]he presence of federal-law issues must always be a major consideration weighing against surrender." *Moses H. Cone*, 460 U.S. at 26. We agree with the district court that this factor therefore weighs against dismissal but note that where (as here) "state and federal courts have concurrent jurisdiction over a claim, this factor becomes less significant." *Nakash v. Marciano*, 882 F.2d 1411,1416 (9th Cir. 1989).

### E.

The sixth factor looks to whether the state court proceeding can adequately protect the rights of the federal litigants. If it cannot, "a district court may not stay or dismiss the federal proceeding." *R.R. Street*, 656 F.3d at 981. We agree with the district court, and the Railway concedes, that the Railway's federal preemption claim can be adjudicated by the state court. This factor thus does not preclude dismissal. *Seneca*, 862 F.3d at 845 (noting that "inadequacy of the state forum . . . may preclude abstention" but an adequate state forum "never compel[s] abstention").

### F.

The forum-shopping factor considers "whether either party improperly sought more favorable rules in its choice of forum or pursued suit in a new forum after facing setbacks in the original proceeding." *Seneca*, 862 F.3d at 846. A "chronology of events suggest[ing] that both parties took a somewhat opportunistic approach to [the] litigation" is not

sufficient to support a *Colorado River* dismissal. *R.R. Street*, 565 F.3d at 981. However, any indication that a party "sought to manipulate the litigation or behaved vexatiously to wind up in the forum of its choosing" supports a finding of forum shopping. *Seneca*, 862 F.3d at 846.

The district court found this factor to weigh in favor of dismissal given the Railway filed its Federal Action after the state court overruled its demurrer, an unfavorable outcome. At the time the district court considered this motion to dismiss, the Railway had also attempted to disqualify the state court judge and remove the State Action to federal court. Although only the City's state-law claims—which do not implicate the Railway's status under federal law—were officially pending at the time the Railway filed the Federal Action, the Railway had already raised federal preemption as an affirmative defense in the State Action. As noted by the district court, the Federal Action is "premised entirely on the [preemption] argument rejected on demurrer." Furthermore, when the Railway filed the Federal Action, it was aware of the Commission's immediate intention to file a complaint-in-intervention raising the federal preemption issue. In consideration of these actions by the Railway, we "reasonably infer" that the Railway had become "dissatisfied with the state court and [sought] a new forum." *Montanore*, 867 F.3d at 1169–71 (weighing forum shopping in favor of a *Colorado River* stay when the plaintiff "filed in federal court a few months after it received an unfavorable decision in state court," noting "the federal proceeding was aimed at the same goal" and the plaintiff had sought to have the state judge removed from the case) (internal quotation omitted). The forum shopping factor weighs in favor of dismissal.

## G.

Under the parallelism factor, the eighth and final consideration of a *Colorado River* analysis, we evaluate whether the state court proceeding is substantially similar to the federal proceeding. "Exact parallelism . . . is not required. It is enough if the two proceedings are substantially similar." *Nakash*, 882 F.2d at 1416 (quotations and citations omitted). However, "the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes a *Colorado River* stay or dismissal." *R.R. Street*, 656 F.3d at 982 (internal quotations omitted).

The district court found the proceedings to be substantially similar given the Railway's ICCTA preemption defense in the State Action was the sole issue in the Federal Action. The district court therefore found it "difficult for the Court to conceptualize [the Federal Action] as anything but a spinoff of the [State Action]." The Railway, however, argues that our recent decision on this parallelism factor in *Ernest Bock, LLC v. Steelman*—decided after the district court's order—precludes dismissal here.

In *Ernest Bock*, we reversed a *Colorado River* stay after determining the state court proceeding might not fully resolve the issues before the federal court and thus the "proceedings [were] not sufficiently parallel to justify abdication of federal jurisdiction." 76 F.4th at 842. In that case, the original state court action was a contract dispute related to liability under a commercial mortgage with related claims and counterclaims for fraud and breach of the implied covenant of good faith and fair dealing. *Id.* at 833. After the state court found in its favor, the plaintiff filed suit in federal district court to challenge alleged actions by the defendants

to shield funds from the $11 million judgment, asserting claims for violation of state and federal fraud and racketeering laws. *Id.* While the federal suit was pending, the state appellate court vacated and remanded the underlying state judgment, thus setting up parallel proceedings where both the state and federal courts would necessarily address the same threshold issue of whether certain contract guarantees were enforceable. *Id.* at 834.

In reversing the district court's grant of a *Colorado River* stay, we found the lack of parallelism dispositive. We focused on a line of cases finding use of *Colorado River* inappropriate when the state proceeding could result in an outcome that would still require additional litigation in the federal case. *See Ernest* Bock, 76 F.4th at 839–40 (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 912–13 (9th Cir. 1993) (finding that when one of two possible state court outcomes would require additional federal litigation, a *Colorado River* stay could not issue); and *U.S. v. State Water Res. Control Bd.*, 988 F.3d 1194, 1204 (9th Cir. 2021) ("We have repeatedly emphasized that a *Colorado River* stay is inappropriate when the state court proceedings will not resolve the entire case before the federal court.")). We held that, because the state court could find the contract obligations enforceable, requiring additional action in federal court to address the alleged fraudulent transfer of assets and racketeering claim, there was substantial doubt as to whether the state proceedings would fully resolve the federal action. *Id.* at 841–42 (citing *Moses H. Cone*, 460 U.S. at 28). Therefore, the use of a *Colorado River* stay was precluded.

In this case, the district court relied on the standard articulated in our pre-*Ernest Bock* cases that exact parallelism is not required and actions that are a "spin-off"

of state litigation can be found sufficiently similar to warrant a stay. *See Nakash*, 822 F.2d at 1417; *Montanore*, 867 F.3d at 1170. The Railway argues that because the Federal Action contains claims that are broader than those in the State Action—and therefore may possibly require continued federal litigation after a decision by the state court—*Ernest Bock* precludes a dismissal. Specifically, the Railway asserts that the Federal Action addresses not only whether the ICCTA preempts the Commission's authority under the Coastal Act, but also the Commission's federal consistency approval authority under the CZMA. The Railway further suggests that the state court could find the Railway is a public utility under state law without reaching the issue of federal preemption. According to the Railway, these possible outcomes would lead to continued federal litigation.

The Railway overreads our decision in *Ernest Bock*. In *Ernest Bock*, there was a realistic probability—bordering on certainty—that one of the two anticipated outcomes in state court (i.e., the state court finding the contract guarantees enforceable) would then require additional proceedings in federal court. *See* 76 F.4th at 840 n.17 (noting the state court proceedings could result only in "binary outcomes"). The fraud and racketeering claims in the federal court, while incorporating the same underlying issue of contract validity, were distinct from the state court claims. That is not the case here. Although there is a theoretical possibility the State Action will not fully resolve the Federal Action, there does not appear to be a realistic probability that a federal controversy will remain after the state proceedings are complete. If the state court holds the Commission lacks authority to regulate the Railway's activities on state law grounds due to the Railway's status as a public utility, there would be no remaining threat of regulation for the federal

court to address—rendering the federal preemption arguments moot if not addressed by the state court. If the State Action does reach the federal preemption issue, it would resolve the only issue in the Federal Action.

The Railway's argument that the Federal Action is broader than the State Action is unpersuasive. The Railway's federal complaint does not allege any other instances of an existing conflict with the City or the Commission outside of those being litigated in the State Action. To the extent the Railway asserts it raises generalized claims of preemption of the City's or Commission's regulatory authority that are not mooted or otherwise addressed by the State Action, those claims would be unripe given the fact-specific nature of the preemption analysis under the ICCTA. The Railway's arguments as to the Commission's CZMA federal consistency authority are similarly unpersuasive. The federal complaint does not raise a CZMA claim as it fails to mention the CZMA even once, and the Railway's complaint did not allege any specific action that the Commission asserts falls within its CZMA review authority.

*Ernest Bock* did not abrogate our prior precedent. *See* 76 F.4th at 840 n.17 (noting the outcome was reconcilable with *Nakash*, where it was unclear the state court proceedings would result in an outcome that would require federal litigation). The "binary outcomes" scenario at issue in *Ernest Bock* is not present here. *Id.* As the district court aptly stated, "it is difficult . . . to conceptualize [the Federal Action] as anything other than a spinoff of the [State Action]." *See Nakash*, 822 F.2d at 1416–17. The state and federal proceedings here are sufficiently parallel such that there is no substantial doubt the State Action will completely resolve the Federal Action. This consideration of whether

state court proceedings will resolve the federal issues does not preclude dismissal under *Colorado River*.

## III.

"Ultimately, 'the decision whether to dismiss a federal action because of parallel state-court litigation' hinges on 'a careful balancing of the [relevant] factors . . . with the balance heavily weighted in favor of the exercise of jurisdiction.'" *R.R. Street*, 656 F.3d at 983 (citing *Moses H. Cone*, 460 U.S. at 16). Here, only the consideration that federal law provides the rule of decision weighs against dismissal of the Federal Action, but not substantially so given the state court has concurrent jurisdiction to adjudicate federal preemption issues. Neither an inadequate state court forum nor insufficiently parallel proceedings, which would preclude the use of a *Colorado River* dismissal, are present here. The forum shopping and piecemeal litigation considerations strongly favor dismissal, and the order in which the forums obtained jurisdiction also supports that outcome. The remaining factors are neutral. On balance, therefore, this case meets the requirements for a *Colorado River* dismissal and there was no abuse of discretion by the district court in dismissing the Federal Action.[7]

The dismissal by the district court is **AFFIRMED**.

---

[7] Because we affirm the district court's dismissal under *Colorado River*, we do not address the alternative arguments raised by the City and Commission regarding *Younger* abstention and *Wilton/Brillhart* abstention.