**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

<table>
<tr><td>

CONTEST PROMOTIONS, LLC,
     *Plaintiff-Appellant*,

v.

CITY AND COUNTY OF SAN
FRANCISCO,
     *Defendant-Appellee.*

</td><td>

No. 17-15909

D.C. No.
3:16-cv-06539-SI

ORDER AND
AMENDED
OPINION

</td></tr>
</table>

Appeal from the United States District Court
for the Northern District of California
Susan Illston, Senior District Judge, Presiding

Argued and Submitted July 12, 2017
San Francisco, California

Filed August 16, 2017
Amended October 23, 2017

Before: Susan P. Graber and Michelle T. Friedland, Circuit
Judges, and Consuelo B. Marshall,[*] District Judge.

Order;
Opinion by Judge Graber

---

[*] The Honorable Consuelo B. Marshall, Senior United States District
Judge for the Central District of California, sitting by designation.

## SUMMARY[**]

### Civil Rights

The panel affirmed the district court's Fed. R. Civ. P. 12(b)(6) dismissal of an action brought pursuant to 42 U.S.C. § 1983 challenging San Francisco's sign-related regulations.

Through its Planning Code, San Francisco prohibits new billboards but allows onsite business signs relating to activities undertaken on the premises, subject to various rules. Noncommercial signs are exempt from the rules. Plaintiff, an advertiser that rents the right to post signs on the premises of third-party businesses, alleged that the City's Planning Code violates the First Amendment by exempting noncommercial signs from its regulatory ambit.

The panel held that the distinction drawn between commercial and noncommercial signs in the City's Planning Code survived intermediate scrutiny under *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980). The panel held that the distinctions directly advanced the City's substantial interests in safety and aesthetics and was not impermissibly underinclusive.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Michael F. Wright (argued), Los Angeles, California, for Plaintiff-Appellant.

James M. Emery (argued) and Victoria Wong, Deputy City Attorneys; Dennis J. Herrera, City Attorney; Office of the City Attorney, San Francisco, California; for Defendant-Appellee.

**ORDER**

The opinion filed on August 16, 2017, and published at 867 F.3d 1171, is amended by the opinion filed concurrently with this order, as follows:

On slip opinion page 14, footnote 4, delete the last sentence: "For the reasons given by the district court, *see Contest Promotions, LLC v. City of San Francisco*, No. 16-cv-06539-SI, 2017 WL 1493277, at \*5 (N.D. Cal. Apr. 26, 2017) (order), we affirm the dismissal of that claim as well." Substitute the following for the deleted sentence: "This claim is moot because no penalties ever were assessed."

With this amendment, the panel has voted to deny Appellant's petition for rehearing. Judges Graber and Friedland have voted to deny Appellant's petition for rehearing en banc, and Judge Marshall has so recommended.

The full court has been advised of the petition for rehearing en banc, and no judge of the court has requested a vote on it.

Appellant's petition for rehearing and rehearing en banc is **DENIED**. No further petitions for rehearing and rehearing en banc may be filed.

---

**OPINION**

GRABER, Circuit Judge:

Plaintiff Contest Promotions, LLC, rents advertising space from businesses in cities around the country, including San Francisco, and places third-party advertising signs in that space, framed by text inviting passersby to enter the business and win a prize related to the sign. Through its Planning Code, San Francisco prohibits new billboards but allows onsite business signs subject to various rules. Noncommercial signs are exempt from the rules. In this, the latest of several challenges that Plaintiff has mounted to San Francisco's sign-related regulations, Plaintiff argues that the distinction between commercial and noncommercial signs violates the First Amendment. The district court dismissed the complaint. Reviewing the order of dismissal de novo, *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1051 (9th Cir. 2017), we affirm.

BACKGROUND

Like other local governments, the City and County of San Francisco, Defendant here, uses its Planning Code to regulate outdoor advertising, including billboards. The purposes of Planning Code Article 6, which contains the advertising rules, include "promot[ing] the aesthetic and environmental values of San Francisco," "protect[ing] public investment in and the

character and dignity of public buildings, streets, and open spaces," "protect[ing] the distinctive appearance of San Francisco," and "reduc[ing] hazards to motorists, bicyclists, and pedestrians." S.F., Cal., Planning Code ("Planning Code") § 601.

The Planning Code draws two distinctions that are relevant here. First, the Planning Code distinguishes between "general advertising signs" and "business signs." A general advertising sign is

> [a] Sign, legally erected prior to the effective date of Section 611 of this Code, which directs attention to a business, commodity, industry or other activity which is sold, offered or conducted *elsewhere than on the premises* upon which the Sign is located, or to which it is affixed, and which is sold, offered or conducted on such premises only incidentally if at all.

*Id.* § 602 (emphasis added). By contrast, a business sign is defined in part as

> [a] Sign which directs attention to the primary business, commodity, service, industry or other activity which is sold, offered, or conducted *on the premises* upon which such Sign is located, or to which it is affixed.

*Id.* (emphasis added). In other words, general advertising signs, like traditional billboards, refer primarily to offsite activities, whereas business signs refer to the activities undertaken on the same premises as the sign. The Code

decrees that "[n]o new general advertising signs shall be permitted at any location within the City as of March 5, 2002." *Id.* § 611(a). By contrast, business signs are permitted, subject to other limitations related to neighborhood and development type.

Second, the Planning Code distinguishes between commercial and noncommercial signs. The latter are exempted from Article 6 altogether. *See* Planning Code § 603(a) (explaining that "[n]othing in this Article 6 shall apply to . . . Noncommercial Signs").[1] Article 6 does not define "noncommercial" except by reference to a non-exhaustive list that includes "[o]fficial public notices," "[g]overnmental signs," "[t]emporary display posters," "[f]lags, emblems, insignia, and posters of any nation or political subdivision," and "[h]ouse numbers." *Id.*

Plaintiff is an advertiser that rents the right to post signs on the premises of third-party businesses. Taking the allegations in the complaint as true, Plaintiff's signs advertise contests in which passing customers can participate by going inside the business and filling out a form. Plaintiff alleges

---

[1] An earlier version of the sign ordinance exempted a long list of types of noncommercial signs without categorically exempting them all. In response to state and federal court decisions that interpreted the ordinance to exempt all noncommercial signs in order to preserve its constitutionality, *see Metro Fuel LLC v. City of San Francisco*, No. C 07-6067 PJH, 2011 WL 900318, at *9 (N.D. Cal. Mar. 15, 2011) (so holding); *City of San Francisco v. Eller Outdoor Advert.*, 237 Cal. Rptr. 815, 828 (Ct. App. 1987) (same), Defendant recently amended the ordinance to formally exempt noncommercial signs, full-stop. *See* Enactment No. 218-16, File No. 160553, San Francisco Board of Supervisors, eff. Dec. 10, 2016 (exempting all noncommercial signs from Article 6).

that the signs depict prizes that customers may win in Plaintiff's contests. No party disputes that Plaintiff's signs are "commercial" under Article 6. In September and October of 2016, and in January of 2017, Defendant issued several Notices of Enforcement, accusing Plaintiff's signs of violating various requirements of Article 6.

Although the San Francisco Charter sets forth an administrative process for challenging the denial of permits for signs, *see* S.F., Cal., Charter § 4.106(b), Plaintiff did not avail itself of that process. Instead, Plaintiff responded by filing suit under 42 U.S.C. § 1983 alleging, inter alia, that Article 6 of the Planning Code violates the First Amendment by exempting noncommercial signs from its regulatory ambit.[2] Plaintiff moved for a preliminary injunction, which the district court denied. Plaintiff then filed the operative first amended complaint, and Defendant moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(6). The district court granted Defendant's motion and entered a judgment of dismissal, and Plaintiff timely appeals.

## DISCUSSION

### A. *Level of Scrutiny*

Our First Amendment analysis begins by determining the level of scrutiny that applies to the Planning Code's Article

---

[2] This is one of several actions that Plaintiff has filed against Defendant, challenging various aspects of its billboard regulations. In a separate memorandum disposition, we affirm the dismissal of an earlier-filed suit raising different First Amendment issues under the Planning Code. And in a second memorandum disposition, also filed this date, we dismiss as moot Plaintiff's appeal from the denial of its motion for a preliminary injunction in this case.

6.   Because noncommercial signs are exempted from its regulatory framework, Article 6 is a regulation of commercial speech.  Restrictions on commercial speech are subject to intermediate scrutiny under *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980).  Citing *Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011), and *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), Plaintiff argues that review more searching than *Central Hudson*'s intermediate scrutiny standard should govern our analysis of Defendant's billboard laws.  But we recently held that "*Sorrell* did not mark a fundamental departure from *Central Hudson*'s four-factor test, and *Central Hudson* continues to apply."  *Retail Dig. Network, LLC v. Prieto ("RDN")*, 861 F.3d 839, 846 (9th Cir. 2017) (en banc).

In *RDN*, we rejected the plaintiff's argument that a liquor advertising rule "imposed a content- or speaker-based burden" and therefore merited "heightened scrutiny."  *Id.* at 847.  We held that the speaker- or content-based nature of a regulation merely meant that such a regulation "implicates the First Amendment, which requires scrutiny greater than rational basis review."  *Id.* (citing *Sorrell*, 564 U.S. at 567).  In those situations, the proper level of scrutiny was the longstanding commercial speech doctrine, which calls for intermediate review.  *Id.* at 848.

We have likewise rejected the notion that *Reed* altered *Central Hudson*'s longstanding intermediate scrutiny framework.  *See Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1198 n.3 (9th Cir. 2016) ("[A]lthough laws that restrict only commercial speech are content based, such restrictions need only withstand intermediate scrutiny." (citing *Reed* and *Central Hudson*)).

We thus reject Plaintiff's argument that review more searching than intermediate scrutiny applies here.

Under that standard, we undertake our analysis in four steps. First, the speech "must concern lawful activity and not be misleading." *Central Hudson*, 447 U.S. at 566. Second, "we ask whether the asserted governmental interest is substantial." *Id.* Then, "[i]f both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest." *Id.*

B. *Central Hudson Analysis*

"Applying the *Central Hudson* test in the context of billboard regulations is not new for the Supreme Court or us." *Outdoor Sys., Inc. v. City of Mesa*, 997 F.2d 604, 610 (9th Cir. 1993). At the first step, neither party disputes that, as alleged, Plaintiff's advertisements concern lawful, non-misleading activity. And at the second step, the Supreme Court and this court have long held—and today, we reaffirm—that a locality's asserted interests in safety and aesthetics, *see* Planning Code § 601 (describing the purpose of Defendant's sign controls), are substantial. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507–08 (1981) (plurality) (explaining that there was no "substantial doubt that the twin goals that the ordinance seeks to further—traffic safety and the appearance of the city—are substantial governmental goals"); *accord Metro Lights, L.L.C. v. City of Los Angeles*, 551 F.3d 898, 904 (9th Cir. 2009) (noting that "[i]t is well-established that traffic safety and aesthetics constitute substantial government interests"); *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895,

905 (9th Cir. 2007) (noting that "both the Supreme Court and our circuit have endorsed these rationales as substantial governmental interests"); *Ackerley Commc'ns of Nw. Inc. v. Krochalis*, 108 F.3d 1095, 1099 (9th Cir. 1997) (reaffirming that "a city's interest in avoiding visual clutter suffices to justify a prohibition of billboards"); *Nat'l Advert. Co. v. City of Orange*, 861 F.2d 246, 248 (9th Cir. 1988) (same). We therefore proceed to the last two steps of *Central Hudson*.

"The last two steps of the *Central Hudson* analysis basically involve a consideration of the 'fit' between the legislature's ends and the means chosen to accomplish those ends."**[3]** *United States v. Edge Broad. Co.*, 509 U.S. 418, 427–28 (1993) (internal quotation marks omitted). The third *Central Hudson* step asks whether "the restriction . . . directly advance[s] the state interest involved." *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 821 (9th Cir. 2013) (internal quotation marks omitted). In considering that question, "we must look at whether the City's ban advances its interest in its general application, not specifically with respect to [the defendant]." *Metro Lights*, 551 F.3d at 904. The regulation also must not be underinclusive, such that it "'undermine[s] and counteract[s]' the interest the government claims it adopted the law to further." *Id.* at 905 (quoting *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 489 (1995)). The fourth step "guards against over-regulation rather than under-regulation." *Id.* at 911. It "does not require that the regulation be the

---

**[3]** As we have observed before, "[i]t has not always been clear how this basic inquiry differs with respect to the last two steps of the *Central Hudson* analysis, and indeed the Supreme Court has observed that the steps of the analysis are 'not entirely discrete.'" *Metro Lights*, 551 F.3d at 904 (quoting *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 183 (1999)).

least-restrictive means to accomplish the government's goal. Rather, what is required is a reasonable fit between the ends and the means, a fit 'that employs not necessarily the least restrictive means, but a means narrowly tailored to achieve the desired objective.'" *Outdoor Sys.*, 997 F.2d at 610 (alteration omitted) (quoting *Bd. of Trs. v. Fox*, 492 U.S. 469, 480 (1989)).

Relying on *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410 (1993), Plaintiff argues that Article 6 falters at the last two steps of the *Central Hudson* analysis because it exempts noncommercial signs for reasons unconnected to Defendant's asserted interests in safety and aesthetics. We disagree for two reasons.

First, *Discovery Network* is materially distinguishable. There, the Supreme Court considered a First Amendment challenge to a city's ordinance that "completely prohibit[ed] the distribution of commercial handbills on the public right of way" using newsracks, while leaving unaffected a far greater number of newsracks that distributed noncommercial material. *Id.* at 414. In particular, the record showed that "the number of newsracks dispensing commercial handbills was 'minute' compared with the total number (1,500–2,000) on the public right of way." *Id.* The Court held that the ordinance's distinction between commercial and noncommercial speech "b[ore] no relationship *whatsoever* to the particular interests that the city has asserted," making the ordinance "an impermissible means of responding to" the city's "admittedly legitimate interests" in safety and aesthetics. *Id.* at 424; *see also id.* at 428 (concluding that "the distinction [the city] has drawn has absolutely no bearing on the interests it has asserted").

The Court's conclusion rested in significant part on the details of the record before it and on the empirically poor connection between the ordinance and the asserted problem. For example, the Court noted that, "[w]hile there was some testimony in the District Court that commercial publications are distinct from noncommercial publications in their capacity to proliferate, the evidence of such was exceedingly weak," *id.* at 425, and that if the "aggregate number of newsracks on its streets" was the real concern, then "newspapers are arguably the greater culprit because of their superior number," *id.* at 426. Thus, "the fact that the regulation 'provide[d] only the most limited incremental support for the interest asserted,'—that it achieved only a 'marginal degree of protection,' for that interest—supported [the Court's] holding that the prohibition was invalid." *Id.* at 427 (first alteration in original) (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 73 (1983)). As the Court emphasized: "Our holding, however, is narrow. As should be clear from the above discussion, we do not reach the question whether, given certain facts and under certain circumstances, a community might be able to justify differential treatment of commercial and noncommercial newsracks. We simply hold that on this record [the city] has failed to make such a showing." *Id.* at 428.

Unlike in *Discovery Network*, Article 6 is not impermissibly under-inclusive. The text of Article 6 explains why such a rule is necessary. It explains that, when the ordinance was adopted, the "increased size and number of general advertising signs" in particular were "creating a public safety hazard," that such signs "contribute to blight and visual clutter as well as the commercialization of public spaces," that there was a "proliferation" of such signs in "open spaces all over the City," and that there was "currently

an ample supply of general advertising signs within the City." Planning Code § 611(f). These are statements of legislative purpose specific to commercial signs. In contrast to a ban on commercial sidewalk newsracks affecting only a tiny fraction of the overall number of newsracks, Defendant's choice to regulate commercial signs (but not noncommercial signs) has a substantial effect on its interests in safety and aesthetics. Accordingly, Article 6 is not constitutionally underinclusive. Its exceptions ensure that the regulation will achieve its end, and the distinctions that it makes among different kinds of speech relate empirically to the interests that the government seeks to advance. *Metro Lights*, 551 F.3d at 906.

*Outdoor Systems* is not to the contrary. Defendant relies on that case to argue that Defendant impermissibly "discriminate[s] against commercial speech solely on the ground that it deserves less protection than noncommercial speech." 997 F.2d at 610. As explained above, that is not the reason for the distinction drawn by Article 6, which focuses instead on the unique risks to Defendant's interests that commercial signs pose. Plaintiff also contends that, unlike the billboard regulations that survived intermediate scrutiny in *Outdoor Systems*, the ones at issue here are not neutral as between commercial and noncommercial speech. But neither were the regulations that we approved in *Outdoor Systems*. As we observed—in a factual recitation that is admittedly in some tension with other analysis in the opinion—Mesa's regulations "contain[ed] a provision that except[ed] all noncommercial signs from the Code's definition of offsite signs." *Id.* at 608–09.

More generally, a second principle supports our conclusion. It is well established that a law need not deal perfectly and fully with an identified problem to survive

intermediate scrutiny.  The Supreme Court long ago rejected the notion "that a prohibition against the use of unattractive signs cannot be justified on [a]esthetic grounds if it fails to apply to all equally unattractive signs."  *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 810 (1984) (noting that "[a] comparable argument was categorically rejected in *Metromedia*").  Instead, for example, "the validity of the [a]esthetic interest in the elimination of signs on public property is not compromised by failing to extend the ban to private property."  *Id.* at 811.  And in *Metromedia*, the Supreme Court noted with approval that the city "ha[d] gone no further than necessary in seeking to meet its ends," when it declined to ban all billboards and instead "allow[ed] onsite advertising and some other specifically exempted signs." 453 U.S. at 508.

We therefore hold that the distinctions drawn in Article 6 between commercial and noncommercial speech directly advance Defendant's substantial interests.  We find no constitutional infirmity in the ordinance's failure to regulate every sign that it might have reached, had Defendant (or its voters) instead enacted another law that exhausted the full breadth of its legal authority.

## CONCLUSION

The distinction drawn between commercial and noncommercial signs in Article 6 of the Planning Code survives intermediate scrutiny under *Central Hudson*.

Accordingly, we affirm the dismissal of Plaintiff's First Amendment claims.[4]

**AFFIRMED.**

---

[4] Plaintiff also argues that the district court erred by refusing to enjoin the accrual of penalties while this litigation is pending, in violation of the due process principle set forth in *Ex Parte Young*, 209 U.S. 123, 147–48 (1908). This claim is moot because no penalties ever were assessed.