**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MONTANORE MINERALS
CORPORATION,
*Plaintiff-Appellee*,

v.

ARNOLD BAKIE; OPTIMA, INC.;
FRANK DUVAL,
*Defendants-Appellants*,

and

EASEMENTS AND RIGHTS OF WAY
UNDER, THROUGH AND ACROSS
THOSE CERTAIN UNPATENTED LODE
MINING CLAIMS LOCATED IN THE
NE 1/4 OF SECTION 15, TOWNSHIP
27 NORTH, RANGE 31 WEST,
LINCOLN COUNTY, MONTANA AND
IDENTIFIED AS POPS 12, POPS 13,
POPS 14 AND POPS 15; UNKNOWN
OWNERS, and all other persons,
unknown, claiming or who might
claim any right, title, estate, or
interest in or lien or encumbrance
the unpatented lode mining claims
described above or any cloud upon
title thereto, whether such claim or
possible claim be present,
*Defendants.*

Nos.  15-35707
        15-35753

D.C. No.
9:13-cv-00133-
DLC

OPINION

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, Chief Judge, Presiding

Argued and Submitted June 13, 2017
Seattle, Washington

Filed August 16, 2017

Before:  DOROTHY W. NELSON, MILAN D. SMITH,
JR., and MORGAN CHRISTEN, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[*]

### *Colorado River* Doctrine

The panel held that the district court abused its discretion by not staying this federal case in deference to pending state court proceedings under *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-19 (1976); reversed the district court's order condemning for Montanore Minerals Corp.'s public use easements and rights of way through four unpatented mining claims; remanded for the district court to stay the proceedings; and on cross-appeal, affirmed the district court's denial of Montanore's motion to determine the validity of the mining claims.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel held that application of the *Colorado River* factors, along with the unusual circumstances of this case, compelled a finding that this was an exceptional case in which the district court's decision not to enter a stay constituted an abuse of discretion.

The panel held that on balance the *Colorado River* factors strongly counseled in favor of a stay: the state court first assumed jurisdiction over the subject claims; proceeding with the federal case presented a risk of piecemeal litigation; the state court had jurisdiction over the case for several years, and had made substantial progress, by the time the federal proceeding was filed; state law provided the rule of decision on the merits, and the case presented complex state law questions better addressed by the state court; the state court could adequately protect the federal rights at issue; Montanore's actions strongly suggested that it was forum shopping by filing in federal court; and the suits were sufficiently parallel for *Colorado River* to apply.

---

**COUNSEL**

Stephen Ross Brown (argued), Garlington Lohn & Robinson PLLP, Missoula, Montana, for Defendants-Appellants/Cross-Appellees.

Mark Stermitz (argued), Matthew A. Baldassin, and Christopher C. Stoneback, Crowley Fleck PLLP, Missoula, Montana, for Plaintiff-Appellee/Cross-Appellant.

---

**OPINION**

M. SMITH, Circuit Judge:

The *causa belli* in this case is the legal status of POPS claims 12–15 (the Subject Claims), which are four unpatented mining claims owned by defendant Arnold Bakie and his predecessors in interest since 1984, and then conveyed to defendant Optima, Inc., in October 2013.[1] Plaintiff Montanore Minerals Corp. (Montanore) seeks to resume construction of a tunnel near Libby, Montana (the Libby Tunnel), which Defendants contend would interfere with their rights in the Subject Claims. To accomplish its goal without objection from Defendants, Montanore first initiated an action in Montana state court in 2007, in which it sought a declaration that the Subject Claims were invalid. After the state court ruled in 2013 that the Subject Claims were valid, Montanore brought an action in federal district court, seeking to condemn for public use easements and rights of way through the Subject Claims. The district court ordered the easements and rights of way condemned for Montanore's public use, and determined that Defendants were not entitled to any compensation as a result of the taking.

We conclude that the district court abused its discretion by not staying the federal case in deference to the pending state court proceedings. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–19 (1976). Accordingly, we reverse the district court's condemnation order, and remand for the district court to stay the proceedings. On cross-appeal, we affirm the district

---

[1] We refer to the Subject Claim owners collectively as Defendants.

court's decision to deny Montanore's motion to determine the validity of the Subject Claims.

## FACTS AND PRIOR PROCEEDINGS

In 1989, Noranda Minerals Corp. (Noranda) began construction of the Libby Tunnel in order to gain underground access to valuable silver and copper deposits located within its patented mining claims, HR 133 and HR 134. To facilitate construction of the Libby Tunnel, in 1989 Noranda entered into a mining lease with certain entities and persons that claimed to own unpatented mining claims located within the Libby Tunnel, including Bakie and his predecessors in interest. After building approximately 14,000 feet of the Libby Tunnel, Noranda ceased construction before it reached HR 133 and HR 134. In 2002, it ceased its development efforts entirely, and disclaimed any interests in the easements it held for tunnel construction pursuant to the 1989 mining lease.

In 2006, Noranda changed its name to Montanore and sought to recommence construction of the Libby Tunnel. Rather than following its previous strategy of obtaining easements from unpatented mining claim holders, it sought to have those mining claims declared invalid, or, alternatively, have easements running through them condemned for public use.

## I. State court action.

In 2007, Montanore filed a state court action seeking, *inter alia*, a declaratory judgment that the Subject Claims were invalid under state and federal law. After years of discovery and cross-motions for summary judgment, the state court issued an interlocutory order in March 2013 holding that the Subject Claims were valid. The order also

enjoined Montanore from crossing the unpatented claims owned by Walter Lindsey, who is not a party to this case. The injunction did not concern the Subject Claims or Defendants.

The injunction was immediately appealable under Montana law, and Montanore appealed to the Montana Supreme Court. In an unpublished order, the Montana Supreme Court vacated the injunction on procedural grounds and remanded for further consideration.[2] On remand to the state district court, Montanore sought to remove the judge who had presided over the state court action, pursuant to Montana Code Annotated (MCA) § 3-1-804(12), but was unsuccessful in its quest. *Mines Mgmt., Inc. v. Fus*, 334 P.3d 929, 931–32 (Mont. 2014). Montanore appealed, and the Montana Supreme Court affirmed the decision of the trial court. *Id.* at 932.

Montanore has not yet appealed the state court's ruling concerning the validity of the Subject Claims, because it was not an appealable final order. In the meantime, the state

---

[2] In its order, the Montana Supreme Court noted that the state district "court's reliance upon the 1989 mining lease as dispositive of Linds[e]y's interests in the non-patented mining claims at issue [was] confusing and appear[ed] from a review of the provisions of the lease to be misplaced." Montanore argues that the state district court's reliance on the 1989 mining lease as dispositive of the validity of the Subject Claims was similarly misplaced. While this conclusion may logically apply, the Montana Supreme Court has not considered the validity of the Subject Claims. Additionally, the court's comment on the validity of the Lindsey claims was not a holding on claim validity; the order merely set aside the Lindsey injunction on "procedural grounds and instructed the [state d]istrict [c]ourt to consider the issue further." *Mines Mgmt., Inc. v. Fus*, 334 P.3d 929, 932 (Mont. 2014).

district court has deferred further state court proceedings pending the outcome of this appeal.

## II.  Federal court action.

On June 28, 2013, Montanore filed a condemnation action in federal court pursuant to Federal Rule of Civil Procedure (Rule) 71.1, seeking to condemn easements and rights of way through the Subject Claims so that it could complete the Libby Tunnel in order to reach HR 133 and HR 134, and begin mining silver and copper.  Montanore also moved for the district court to determine the validity of the Subject Claims.

Defendants moved for the district court to stay the federal proceedings in deference to the pending, parallel state court proceedings, pursuant to the *Colorado River* doctrine.   The district court agreed with Defendants regarding Montanore's motion to determine claim validity, and thus denied Montanore's motion.  However, the district court declined to stay the condemnation action because it determined that the state court proceedings were not sufficiently parallel to the federal proceedings for the *Colorado River* doctrine to apply.

The condemnation action proceeded and the district court held that Montanore met Montana law's requirements to condemn private property for public use, and, on April 29, 2014, it issued a preliminary condemnation order in favor of Montanore.  *See* MCA § 70-30-111(1).  The district court next appointed three experts (the Commissioners) to determine what compensation was due to the condemnees. The Commissioners held a compensation hearing, and then issued a report recommending that $0 was just compensation for the condemned interests. The district court adopted the Commissioners' report in its entirety, and granted judgment

as a matter of law for Montanore on August 7, 2015. The district court issued a final condemnation order on September 8, 2015. Defendants timely appealed, and Montanore timely cross-appealed.

## STANDARD OF REVIEW

"Whether the facts of a particular case conform to the requirements for a *Colorado River* stay or dismissal is a question of law which we review de novo." *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 840 (9th Cir. 2017) (quoting *Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1032 (9th Cir. 2005)). "If we conclude that the *Colorado River* requirements have been met, we then review" the district court's decision for abuse of discretion. *Id.* The district court's "discretion must be exercised within the narrow and specific limits prescribed by the [*Colorado River*] doctrine." *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 973 (9th Cir. 2011) (quoting *Holder v. Holder*, 305 F.3d 854, 863 (9th Cir. 2002)).

## ANALYSIS

In exceptional circumstances, a federal court may decline to exercise its "virtually unflagging obligation" to exercise federal jurisdiction, in deference to pending, parallel state proceedings. *Colo. River*, 424 U.S. at 817. Such a decision "rest[s] on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* (internal quotation marks and alteration omitted). The decision "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

We have recognized eight factors to be considered when reviewing a district court's decision regarding a *Colorado River* stay or dismissal. *R.R. St.*, 656 F.3d at 978. They are:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*Id.* at 978–79. Some factors may not apply in some cases, and "[a]ny doubt as to whether a factor exists should be resolved against a stay" or dismissal. *Seneca Ins. Co.*, 862 F.3d at 842 (quoting *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990)).

When it is appropriate for a court to decline to exercise jurisdiction pursuant to the *Colorado River* doctrine, we generally require a stay rather than a dismissal. *Attwood v. Mendocino Coast Dist. Hosp.*, 886 F.2d 241, 243 (9th Cir. 1989). A stay "ensures that the federal forum will remain open if for some unexpected reason the state forum . . . . turn[s] out to be inadequate." *Id.* (internal quotation marks omitted).

## I. The district court abused its discretion by declining to stay the federal condemnation action.

As a threshold matter, the *Colorado River* doctrine applies in this case because there are "pending state court proceedings involving the same property." *Sexton v. NDEX W., LLC*, 713 F.3d 533, 538 (9th Cir. 2013) (internal quotation marks omitted). We acknowledge that it is exceedingly rare for an appellate court to hold that a district court abused its discretion by declining to stay federal proceedings pursuant to *Colorado River*. However, application of the *Colorado River* factors, along with the unusual circumstances of this case, compel a finding that this is the exceptional case in which a district court's decision not to enter a stay constituted an abuse of discretion. We address each factor in turn.

### A. Which court first assumed jurisdiction over the property at stake.

This factor applies when both forums exercise jurisdiction over the same property, and addresses the concern "that the parallel proceedings will result in inconsistent dispositions of [such property]." *Seneca Ins. Co.*, 862 F.3d at 842. The Supreme Court has held "that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts." *Colo. River*, 424 U.S. at 818.

We held that this *Colorado River* factor was "dispositive" in *40235 Washington St. Corp. v. Lusardi*, 976 F.2d 587, 589 (9th Cir. 1992) (per curiam). There, the appellee first filed a quiet title action in state court regarding disputed property, and the appellant then filed a quiet title action concerning the same property in federal court, along with a claim for declaratory relief. *Id.* at 588. We affirmed

the district court's decision to stay the federal proceedings because "[a] quiet title action is a proceeding *in rem*," and "[i]n proceedings *in rem* or *quasi in rem*, the forum first assuming custody of the property at issue has exclusive jurisdiction to proceed." *Id.* at 589. Thus, "under *Colorado River*, the district court was *required* to stay the federal quiet title action." *Id.* (emphasis added); *see also Sexton*, 713 F.3d at 538 ("[W]here there are 'pending state court proceedings' involving a single property, the first *Colorado River* factor bars us from exercising jurisdiction over that property . . . ."). Further, the district court was "required" to stay the appellant's declaratory relief claim, even though it was not *in rem* or *quasi in rem*, because it "involve[d] the same question" as the *in rem* claim, and could be resolved in state court. *Lusardi*, 976 F.2d at 589.

In this case, the first factor does not *require* a stay, as it did in *Lusardi*, because Montanore did not bring an *in rem* or *quasi in rem* action in state court; it sought a declaration that the Subject Claims were invalid under state and federal law. *Cf. id.* However, while we decline to apply a categorical rule requiring a stay under the first factor in this case, we still hold that this factor favors a stay. The state court first obtained jurisdiction over the Subject Claims, and the parallel proceedings presented the risk of inconsistent dispositions of the Subject Claims. While the state court determined that the Subject Claims were valid, in the federal action doubts concerning claim validity permeated the decision to award no compensation for the taking, strongly suggesting inconsistent views of the validity of the property in the two actions. *See* Part I.C *infra*.

## B.  The inconvenience of the federal forum.

In *Colorado River*, the Court noted the inconvenience of the 300-mile distance between the state and federal court as

a factor favoring dismissal. 424 U.S. at 820. Montanore filed the state court action in Libby, Montana, and the federal district court action about 200 miles away, in Missoula, Montana. On appeal, Defendants argue that this factor favors a stay, but in their district court brief they acknowledged that "neither forum has a significant advantage as to convenience." Accordingly, we treat this factor as neutral in our analysis. *Accord Madonna*, 914 F.2d at 1368 ("Although 200 miles is a fair distance, it is not sufficiently great that this factor points toward abstention. The district court did not err in finding this factor 'unhelpful.'").

## C. The desire to avoid piecemeal litigation.

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988). For this factor to favor a stay, "the case must raise a special concern about piecemeal litigation, which can be remedied by staying or dismissing the federal proceeding," and which "the court could [not] have avoided by other means." *R.R. St.*, 656 F.3d at 979 (internal quotation marks and citation omitted).

The state and federal courts in this case did not consider precisely the same issue; the state court considered the validity of the Subject Claims, while the federal court considered condemnation of property interests in the Subject Claims. However, Montanore's decision to file two separate actions in two different courts resulted in piecemeal litigation of its singular goal (that is, extinguishing Defendants' claimed rights in the Subject Claims). It did not promote "conservation of judicial resources and comprehensive disposition of litigation," *Colorado River*,

424 U.S. at 817, to have a federal court "adjudicate rights that [were] implicated in a vastly more comprehensive state action." *R.R. St.*, 656 F.3d at 979 (internal quotation marks omitted).

Moreover, the validity of the Subject Claims was considered by the Commissioners in their compensation recommendation, resulting in duplication of efforts. Although the district court instructed the Commissioners that "[f]inal determination of the validity of Defendants' unpatented mining claims [was] not before [the federal] court," and would "be determined in a separate, state court action," the district court also instructed the Commissioners to consider any evidence regarding the validity of the Subject Claims "for its bearing on the issue of the amount of just compensation owed to Defendants." The district court also acknowledged in an order issued on April 29, 2014, that the validity of the Defendants' claimed interests was relevant to the question of just compensation.

In their report, which was adopted by the district court in its entirety, the Commissioners listed as two of the five reasons supporting the determination that no compensation was owed (1) that "questions exist as to the validity and even the location of the Subject Claims," and (2) "the validity of the Subject Claims is subject to a state district court proceeding." Although this case does not involve different tribunals ruling on precisely the same issue, the validity of the claims was crucial in both proceedings, and both courts considered the issue and reached arguably conflicting results. Thus, this factor favors a stay.

### D. The order in which the forums obtained jurisdiction.

"We next consider the order in which the forums gained jurisdiction." *R.R. St.*, 656 F.3d at 980. We do not apply this factor mechanically, but instead consider "the realities of the case at hand" "in a pragmatic, flexible manner." *Moses H. Cone*, 460 U.S. at 21. We consider not only the order, but also the relative progress of the state and federal proceedings. *Am. Int'l Underwriters*, 843 F.2d at 1257.

This factor strongly favors a stay. When Montanore filed its action in federal court in June 2013, it had already been litigating the state case for six years. The parties had conducted extensive discovery, filed cross-motions for summary judgment, and the state court had issued an order deciding several issues in the case in March 2013. Since then, the Montana Supreme Court has decided two interlocutory appeals taken in the state case. Thus, not only did the state court obtain jurisdiction long before the federal court, but the state court proceedings had progressed significantly. Montanore "should . . . . be bound by its initial choice of the state forum, given the substantial progress that has occurred in the state court litigation." *Id.* at 1259.

### E. Whether federal law or state law provides the rule of decision on the merits.

The fact that state law provides the rule of decision on the merits in a case may favor a stay, but "only when the state law questions are themselves complex and difficult issues better resolved by a state court; it is not enough that a state law case is complex because it involves numerous parties or claims." *Seneca Ins. Co.*, 862 F.3d at 844.

Montana eminent domain law provided the rule of decision on the merits in the federal action.  The case presents "rare circumstances" where "the presence of state-law issues . . . . weigh[s] in favor of [a stay]" because the legal issues involved go beyond what we have identified as routine state law issues (e.g., breach of contract, indemnification and subrogation, misrepresentation, and breach of fiduciary duty). *R.R. St.*, 656 F.3d at 980 (internal quotation marks omitted); *see also Madonna*, 914 F.2d at 1370.  The condemnation action raises difficult questions regarding Defendants' statutory right to appeal a compensation determination to a jury pursuant to MCA § 70-30-304(1), the elements of a taking for public use under MCA § 70-30-111(1), and the proper method to determine just compensation for interests in unpatented mining claims. The state court is in a better position to address these issues than is the federal court.  *See Seneca Ins. Co.*, 862 F.3d at 844.

### F. Whether the state court proceedings can adequately protect the rights of the federal litigants.

This factor concerns "whether the state court might be unable to enforce federal rights." *Id.* at 845.  If the state court "cannot adequately protect the rights of the federal litigants," a *Colorado River* stay is inappropriate. *R.R. St.*, 656 F.3d at 981.  When it is clear "that the state court has authority to address the rights and remedies at issue" this factor may weigh in favor of a stay. *Id.* "[H]owever, this factor is more important when it weighs [against a stay]." *Id*. (internal quotation marks omitted).

There is no doubt that Montana state courts have the authority to hear condemnation actions brought under Montana law. *See, e.g.*, *Park Cty. ex rel. Paradise & Shields*

*Valley TV Dists. v. Adams*, 100 P.3d 640 (Mont. 2004). Moreover, Montanore does not claim that the state court would lack jurisdiction over a condemnation action, or lack the power to enter any orders to protect its rights. *Cf. Moses H. Cone*, 460 U.S. at 26; *Holder*, 305 F.3d at 869 n.5. Montanore instead argues that the state court cannot adequately protect its rights because the state court refused to consider an alleged "Federal Land Policy Management Act defect" (federal defect) when considering the validity of the Subject Claims. However, there is no reason to believe that Montanore could not have properly raised this argument in state court. The state court refused to consider the argument because although it was based on Defendants' alleged failure to make a filing and pay a fee in 2005, Montanore did not raise the argument in state court until 2016, nine years after Montanore initiated suit on claim validity, and three years after the state court held that the Subject Claims were valid.

Before the state court declined to consider the claimed federal defect in 2016, the district court also refused to consider the claim, and we affirm the district court's decision. *See* Part II, *infra.* Thus, we cannot agree that the state court could not adequately protect Montanore's federal rights because it refused to consider a late-raised argument that was properly denied in federal court. This factor favors a stay.

## G.  The desire to avoid forum shopping.

We next ask whether Montanore attempted to forum shop by filing in federal court. *Nakash v. Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989). If Montanore "pursued suit in a new forum after facing setbacks in the original proceeding," this factor may weigh in favor of a stay. *Seneca Ins. Co.*, 862 F.3d at 846. In *Nakash*, for example, this factor

strongly weighed in favor of a stay when, after litigating for three and a half years in state court, the plaintiffs "[a]pparently . . . . [became] dissatisfied with the state court and [sought] a new forum for their claims" by filing in federal court. 882 F.2d at 1417.

This case goes further than *Nakash*. After six years of litigation, Montanore filed in federal court a few months after it received an unfavorable decision in state court. Although it did not bring the exact same claim in federal court, the federal proceeding was aimed at the same goal. We can reasonably infer that Montanore was seeking to avoid the state court judge whose rulings it repeatedly characterized as wrong in its appellate briefing, and whom it unsuccessfully sought to have removed from the case under Montana law. This factor therefore favors a stay.

### H. Whether the state court proceedings will resolve all issues before the federal court.

Finally, we consider "whether the state court proceeding sufficiently parallels the federal proceeding" in order "to ensure 'comprehensive disposition of litigation.'" *R.R. St.*, 656 F.3d at 982 (quoting *Colo. River*, 424 U.S. at 817). "[T]he existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a stay." *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993).

We do not require "exact parallelism" under this factor; it is sufficient if the proceedings are "substantially similar." *Nakash*, 882 F.2d at 1416. In *Nakash*, for example, the suits were sufficiently parallel because they concerned the same relevant conduct and named the same pertinent parties. *Id.* at 1416–17. The parallelism requirement was met even though additional parties were named in the state suit, the

federal suit included additional claims, and the suits arguably focused on different aspects of the dispute. *Id.*

The district court in this case made its *Colorado River* determination on this factor alone. It held that parallelism did not exist because "there [was] no parallel state court proceeding adjudicating the merits of a condemnation order with respect to the easements and rights of way at issue." We do not require such "exact parallelism." *Nakash*, 882 F.2d at 1416. Moreover, we are "particularly reluctant to find that the actions are not parallel when the federal action is but a 'spin-off' of more comprehensive state litigation." *Id.* at 1417. The state and federal proceedings are substantially similar because they both concern rights to the Subject Claims, name the same pertinent parties, and attempt to accomplish the same goal (namely, extinguishing the Defendants' rights to the Subject Claims). The state court could have resolved all issues before the federal court, and judicial resources would have been saved and duplicative litigation prevented, if Montanore had continued with its initial choice of the state forum.

We are confident that the state court, which has had jurisdiction over this dispute since 2007, will resolve all of the claims properly raised in that court. However, we direct the district court to enter a stay, rather than a dismissal, so "that the federal forum will remain open if for some unexpected reason the state forum . . . . turn[s] out to be inadequate." *Attwood*, 886 F.2d at 243 (internal quotation marks omitted).

## I.   The balancing of the *Colorado River* factors.

On balance, the *Colorado River* factors strongly counsel in favor of a stay. The state court first assumed jurisdiction over the Subject Claims; proceeding with the federal case

presented a risk of piecemeal litigation; the state court had jurisdiction over the case for several years, and had made substantial progress, by the time the federal proceeding was filed; state law provides the rule of decision on the merits, and the case presents complex state law questions better addressed by the state court; the state court can adequately protect the federal rights at issue; Montanore's actions strongly suggest that it was forum shopping by filing in federal court; and the suits are sufficiently parallel for *Colorado River* to apply.[3]

Under the unusual circumstances of this case, we not only hold that *Colorado River* clearly applies, but also that the district court abused its discretion when it declined to stay the case. As we explained in *Lusardi*, when the *Colorado River* doctrine may apply to a case, we avoid engaging in different analyses for related claims in a single action, because such an approach "would increase, not decrease, the likelihood of piecemeal adjudication or duplicative litigation," undermining the *Colorado River* doctrine. 976 F.2d at 589.

As part of the condemnation action, Montanore moved for the federal court to determine the validity of the Subject Claims. The district court applied *Colorado River* to that motion only, noting that the pending state court proceeding concerned the exact same issue. However, claim validity could not so easily be separated from the condemnation action, as evidenced by the reasons the Commissioners gave for their recommendation of no compensation, and the district court's instruction that claim validity was relevant to the compensation question. It was an abuse of discretion to

---

[3] The only factor that is neutral in our analysis is the "inconvenience of the federal forum" factor.

decline jurisdiction over one aspect of the case, rather than the entire case, when that aspect was relevant to the case as a whole.

## II. The district court did not abuse its discretion by dismissing Montanore's motion to determine the validity of the Subject Claims.

Montanore cross-appeals the district court's decision, pursuant to *Colorado River*, to decline to consider Montanore's motion to determine the validity of the Subject Claims. The motion was filed as part of the condemnation action, and, for the reasons already discussed, we conclude that the district court should have declined to exercise jurisdiction over the entire condemnation action. Thus, the district court did not abuse its discretion by dismissing the motion.[4]

### CONCLUSION

We REVERSE the district court's condemnation order and REMAND for the district court to stay the federal proceedings. On cross-appeal, we AFFIRM the district court's dismissal of Montanore's motion to determine claim validity.

---

[4] While "[w]e generally require a stay rather than a dismissal" under *Colorado River*, "we do not consider this issue because [Montanore] did not raise it on appeal." *R.R. Street*, 656 F.3d at 978 n.8.