**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

v.

STATE WATER RESOURCES CONTROL
BOARD; E. JOAQUIN ESQUIVEL,
Board Chair,
*Defendants-Appellees.*

No. 20-15145

D.C. No.
2:19-cv-00547-
DAD-EPG

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding[*]

Argued and Submitted January 13, 2021
San Francisco, California

Filed February 24, 2021

Before: CARLOS T. BEA and MILAN D. SMITH, JR.,
Circuit Judges, and JANE A. RESTANI,[**] Judge.

Opinion by Judge Milan D. Smith, Jr.

---

[*] Then-Chief Judge O'Neill issued the order on appeal. Judge O'Neill assumed senior status on February 2, 2020. The case is now assigned to the Honorable Dale A. Drozd, United States District Judge for the Eastern District of California.

[**] The Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

**SUMMARY**[***]

### *Colorado River* Stay / *Pullman* Abstention

The panel reversed the district court's order granting a partial stay under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), of three state law claims, in an action brought by the United States alleging that the California State Water Resources Board violated various provisions of the California Environmental Quality Control Act; and remanded to allow the United States' claims to proceed, subject to regular issues of justiciability.

The United States simultaneously filed separate suits against the Board in state and federal court. The United States informed each court of the existence of the other suit, and noted that the federal district court was its preferred forum. The Board asked the district court to abstain from hearing the federal case or stay the case pursuant to *Colorado River*. The district court denied abstention under a number of doctrines, and issued a partial *Colorado River* stay.

The panel held that it had jurisdiction over the appeal pursuant to the exception to the finality rule under *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541 (1949).

The panel held that the district court abused its discretion in granting a partial *Colorado River* stay. Specifically, the

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

panel held that partial stays pursuant to *Colorado River* were permissible only in very limited circumstances, namely when there was strong evidence of forum shopping. Because there was little evidence of forum shopping here, the district court erred.

The Board argued that *Pullman* abstention provided an alternative ground to uphold the district court's stay. *Pullman* requires that a federal court abstain from deciding the federal question while it awaits the state court's decision on the state law claims. The district court did not stay the federal constitutional claim here, and declined to abstain pursuant to *Pullman*. The panel held that it could not affirm on the basis of *Pullman* abstention because it would impermissibly enlarge the rights the Board obtained in the district court judgment. Namely, the Board, which did not cross-appeal, cannot ask this court to affirm on *Pullman* grounds because this court would necessarily have to stay the intergovernmental immunity claim, which the district court allowed to proceed.

**COUNSEL**

Kenneth A. Klukowski (argued), John L. Smeltzer, Romney Philpott, Erika Norman, and Daniel Halainen, Attorneys; Eric Grant, Deputy Assistant Attorney General; Jonathan D. Brightbill, Principal Deputy Assistant Attorney General; Jeffrey Bossert Clark, Assistant Attorney General; Environment and Natural Resources Division, United States Department of Justice, Washington, D.C.; Michael Gheleta and Amy Aufdemberge, Attorneys, Office of the Solicitor, United States Department of the Interior, Washington, D.C.; for Plaintiff-Appellant.

Dylan Johnson (argued), Deputy Attorney General, Office of the Attorney General, San Diego, California; Mark W. Poole and Tamara T. Zakim, Deputy Attorneys General; Annadel A. Almendras and Michael P. Cayaban, Supervising Deputy Attorneys General; Robert W. Byrne, Senior Assistant Attorney General; Xavier Becerra, Attorney General; Office of the Attorney General, Oakland, California; for Defendants-Appellees.

**OPINION**

M. SMITH, Circuit Judge:

The United States simultaneously brought suits in the United States District Court for the Eastern District of California and the Superior Court of the State of California for the County of Sacramento. The United States pleaded three identical causes of action under California state administrative law in both suits, and later added a federal constitutional claim to its federal suit. The federal district court stayed the three state law claims pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), and allowed the federal constitutional claim to proceed.

Our precedent does not allow a partial stay pursuant to *Colorado River*, except in rare circumstances. Such circumstances do not exist here. Accordingly, we reverse the decision of the district court granting a partial stay, and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The California State Water Resources Control Board (the Board) is a state agency that administers water rights

and water quality laws.  *See* Cal. Water Code § 13001.  As a part of its responsibilities, the Board manages the San Francisco Bay/Sacramento-San Joaquin Delta Estuary (the Bay-Delta).  Included in the Bay-Delta system is the New Melones Dam, which is operated by the United States Bureau of Reclamation.  The Bureau of Reclamation must comply with California law in operating the dam.  *See* 43 U.S.C. § 383; *California v. United States*, 438 U.S. 645, 678–79 (1978).

The Board first adopted a water quality control plan for the Bay-Delta in 1978.  In December 2018, after completing a nine-year process, the Board approved an Amended Plan.  The Amended Plan made a number of changes to the management of the Bay-Delta, including altering flow objectives and salinity levels.  The United States claims that these changes adversely affect operation of the New Melones Dam.

On March 28, 2019, the United States simultaneously filed separate suits against the Board in state and federal court.[1]  In federal district court, the United States asserted jurisdiction pursuant to 28 U.S.C. § 1345.  Section 1345 allows the United States to bring suits in federal court consisting entirely of state law claims.  *See United States v. California*, 328 F.2d 729, 734 (9th Cir. 1964); *Barrett v. United States*, 853 F.2d 124, 130 (2d Cir. 1988).

In the federal court action, the United States initially alleged the same three causes of action as pleaded in the state court action.  The United States claimed that the Board

---

[1] The United States also added Board Chair E. Joaquin Esquivel as a defendant in the federal suit.  We refer to the Board and Esquivel collectively as the Board.

violated various provisions of the California Environmental Quality Control Act (CEQA), an administrative statute that partially governs the Board's actions. *See* Cal. Pub. Res. Code § 21000 et seq. After the Board moved to dismiss the federal suit, the United States filed a First Amended Complaint only in the federal suit. In that amended complaint, the United States asserted that the Board also discriminated against the United States under the intergovernmental immunity doctrine of the federal Constitution. *See generally United States v. California*, 921 F.3d 865, 878 (9th Cir. 2019).

In both the state and federal complaints, the United States informed each court of the existence of the other suit, and noted that the federal district court was its preferred forum. To the California Superior Court, the United States stated that the "action in federal district court preserves [the United States'] preferred choice of a federal forum to resolve its claims." The United States brought the state court suit "only out of an abundance of caution in the event that, for any reason, [the United States'] federal suit is not adjudicated on the merits in federal court and to ensure that the state statute of limitations was scrupulously complied with."

Similarly, the United States informed the federal district court that it "filed this action in federal district court to preserve its choice of a federal forum to resolve its claims." The United States noted that it "concurrently filed a similar action in California state court in Sacramento County, asserting claims under CEQA (but not the Intergovernmental Immunity doctrine)."

Between December 2018 and April 2019, parties other than the United States filed eleven additional suits in California state court asserting CEQA violations based on

the Amended Plan.  On May 8, 2019, a California state judge coordinated eleven of the cases, but did not coordinate the United States' case, as the United States had previously moved for a stay in its state court case pending the resolution of its federal case.  On May 24, 2019, the Board asked that the United States' case in state court also be coordinated.  As of the date of the district court's decision in this case, that state court motion was still pending.[2]

The Board asked the district court to abstain from hearing the case or stay the case pursuant to *Colorado River*.  The district court denied abstention under a number of doctrines, including *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496 (1941).  *See United States v. State Water Res. Control Bd.*, 418 F. Supp. 3d 496, 504–15 (E.D. Cal. 2019).

Next, the district court considered whether it could issue a *Colorado River* stay.  The district court noted that we have "not addressed the propriety of issuing a partial *Colorado River* stay, but district courts in the Ninth Circuit [have] found partial stays permissible, 'where some, but not all, of a federal plaintiff's claims are pending in a parallel state action.'"  *Id.* at 516 (quoting *Krieger v. Atheros Comm'cs, Inc.*, 776 F. Supp. 2d 1053, 1060–61 (N.D. Cal. 2011)).  Based on this precedent from other district courts, the district court examined the CEQA and intergovernmental immunity claims separately for the purposes of conducting a *Colorado*

---

[2] The Board asks that we take judicial notice of subsequent events in state court.  *See* Dkt. No. 26.  When we decide a *Colorado River* appeal, we "examine the district court's decision based on the state of affairs at the time of that decision."  *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 974 (9th Cir. 2011).  "[W]e consider only 'the then-available facts.'"  *Id.* (citation omitted).  Adhering to our precedent regarding the scope of review, we deny the Board's motion.

*River* analysis.  The district court decided that the *Colorado River* factors weighed against staying the intergovernmental immunity claim, but that those factors weighed in favor of staying the CEQA claims.  *See id.* at 516–19.  The district court ultimately stayed the CEQA claims "until further notice," but allowed the intergovernmental immunity claim to proceed, subject to further briefing on ripeness and standing.  *Id.* at 519–24.

The United States appealed the *Colorado River* stay.  The Board did not cross-appeal the district court's decision to deny abstention pursuant to *Pullman*.

## II.  JURISDICTION AND STANDARD OF REVIEW

Ordinarily, we have "jurisdiction to review a *Colorado River* stay order pursuant to 28 U.S.C. § 1291."  *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 840 (9th Cir. 2017) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 9–13 (1983)).  In *Moses H. Cone*, the Supreme Court determined that a *Colorado River* stay was a final appealable order pursuant to § 1291 because "a stay of the federal suit pending resolution of the state suit meant that there would be no further litigation in the federal forum."  *Moses H. Cone*, 460 U.S. at 10.  The question of whether a *partial Colorado River* stay is a final order pursuant to § 1291 might be a distinct question.  With a partial stay, there is still "further litigation in the federal forum."  *Id.*  The federal district court would still have to adjudicate the non-stayed claims.  Thus, it is unclear whether we would have jurisdiction pursuant to the normal finality rules of § 1291.

However, the Supreme Court alternatively held that even if the district court "order were not final for appealability purposes, it would nevertheless be appealable within the

exception to the finality rule under *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541 (1949)." *Moses H. Cone*, 460 U.S. at 11. Pursuant to *Cohen*, "the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Id.* at 11–12 (citation and internal quotation marks omitted). As in *Moses H. Cone*, the district court order in this case meets those three criteria. First, the district court's order "conclusively determine[d] the . . . question" of whether a *Colorado River* stay was appropriate. *Id.* at 11. Second, the *Colorado River* stay "issue [is] completely separate from the merits of the action." *Id.* Finally, the "order would be entirely unreviewable if not appealed now" because "[o]nce the state court decide[s] the" CEQA claims, "the federal court would be bound to honor that determination as res judicata." *Id.* at 12. Therefore, we have jurisdiction over this appeal.

"Whether the facts of a particular case conform to the requirements for a *Colorado River* stay or dismissal is a question of law which we review de novo." *Seneca Ins.*, 862 F.3d at 840 (citation and internal quotation marks omitted). "If we conclude that the *Colorado River* requirements have been met, we then review for abuse of discretion the district court's decision to stay or dismiss the action." *Id.* "[T]his standard is stricter than the flexible abuse of discretion standard used in other areas of law because discretion must be exercised within the narrow and specific limits prescribed by the [*Colorado River*] doctrine." *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 973 (9th Cir. 2011) (citation and internal quotation marks omitted).

## III.  Colorado River Stay

*Colorado River* is not an abstention doctrine, though it shares the qualities of one.  *See Nakash v. Marciano*, 882 F.2d 1411, 1415 n.5 (9th Cir. 1989).  Pursuant to *Colorado River*, in rare cases, "there are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts."  *Colo. River*, 424 U.S. at 817.  In the interest of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," a district court can dismiss or stay[3] "a federal suit due to the presence of a concurrent state proceeding."  *Id.* at 817–18.  Because of "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given [to] them," *id.* at 817, "[o]nly the clearest of justifications will warrant [a] dismissal" or stay, *id.* at 819.  The instances in which a court can stay an action pursuant to *Colorado River* "are considerably more limited than the circumstances appropriate for abstention.  The former circumstances, though exceptional, do nevertheless exist."  *Id.* at 818.

---

[3] Although *Colorado River* involved dismissal of a federal suit, *see Colo. River*, 424 U.S. at 821, we "generally require a stay rather than a dismissal," *R.R. Street*, 656 F.3d at 978 n.8.  That is because "[a] stay 'ensures that the federal forum will remain open if for some unexpected reason the state forum . . . turn[s] out to be inadequate.'"  *Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1166 (9th Cir. 2017), *as amended on denial of reh'g and reh'g en banc* (Oct. 18, 2017) (quoting *Attwood v. Mendocino Coast Dist. Hosp.*, 886 F.2d 241, 243 (9th Cir 1989)).

The court's "task in [such] cases . . . is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Moses H. Cone*, 460 U.S. at 25. "If there is any substantial doubt as to" whether "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties . . . it would be a serious abuse of discretion to grant the stay or dismissal at all." *Id.* at 28.

Building on Supreme Court precedent, we have listed eight factors to be considered in determining whether a *Colorado River* stay is appropriate:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*R.R. St.*, 656 F.3d at 978–79 (citation omitted).

The factors are not a "mechanical checklist." *Moses H. Cone*, 460 U.S. at 16. We apply the factors "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Id.* at 21. "The weight to be given to any one factor

may vary greatly from case to case, depending on the particular setting of the case." *Id.* at 16. "Some factors may not apply in some cases," *Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1166 (9th Cir. 2017), *as amended on denial of reh'g and reh'g en banc* (Oct. 18, 2017), and, in some cases, a single factor may decide whether a stay is permissible, *see, e.g.*, *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993); *Moses H. Cone*, 460 U.S. at 19 ("[T]he consideration that was paramount in *Colorado River* itself [was] the danger of piecemeal litigation.").

In this particular case, the eighth factor—"whether the state court proceedings will resolve all issues before the federal court," *R.R. St.*, 656 F.3d at 979—controls the outcome. This factor asks about the similarity between the state and federal suits. "Though exact parallelism . . . is not required, substantial similarity of claims is necessary before abstention is available." *Seneca Ins.*, 862 F.3d at 845 (citation and internal quotation marks omitted). This factor "is more relevant when it counsels against abstention, because while . . . insufficient parallelism may preclude abstention, the alternatives never compel abstention." *Id.* "[T]he existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a stay." *Intel Corp.*, 12 F.3d at 913. Such doubt is "a significant countervailing consideration that" can be "dispositive." *Id.* Additionally, this factor should be addressed "as a preliminary matter." *R.R. St.*, 656 F.3d at 979 n.9 (citation omitted).

Neither we, as the district court noted, nor it appears any other circuit court has considered the propriety of a partial *Colorado River* stay. *See State Water Res. Control Bd.*, 418 F. Supp. 3d at 516. However, multiple district courts

within the Ninth Circuit have issued partial *Colorado River* stays.  *See id.* (citing intra-circuit district court cases); *see also Harris v. TD Ameritrade, Inc.*, No. 17-CV-6033-LTS-BCM, 2018 WL 1157802, at *6 n.6 (S.D.N.Y. Feb. 14, 2018) (citing out-of-circuit district court cases).

Both the Supreme Court and our court have suggested that partial stays are inappropriate.  In *Colorado River* itself, the Supreme Court stated that a court should "giv[e] regard to conservation of judicial resources and *comprehensive disposition of litigation*."  *Colo. River*, 424 U.S. at 817 (emphasis added).  Similarly, in *Moses H. Cone*, which clarified the doctrine, the Court noted that "the decision to invoke *Colorado River* necessarily contemplates that the federal court *will have nothing further to do in resolving any substantive part of the case*, whether it stays or dismisses." *Moses H. Cone*, 460 U.S. at 28 (emphasis added).

We have repeatedly emphasized that a *Colorado River* stay is inappropriate when the state court proceedings will not resolve the entire case before the federal court.  In *Intel Corporation*, we noted the Supreme Court's declaration that "a district court may enter a *Colorado River* stay order only if it has 'full confidence' that the parallel state proceeding will *end the litigation*."  *Intel Corp.*, 12 F.3d at 913 (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988)) (emphasis added).  We further described how "the requirement of 'parallel' state court proceedings implies that those proceedings are sufficiently similar to the federal proceedings to provide relief for *all of the parties' claims*."  *Id.* at 913 n.4 (emphasis added).  *See also id.* at 913 n.7 (denying a *Colorado River* stay because "we find that there exists a substantial doubt as to whether the state court proceedings will resolve all of the disputed issues in this case").

In *Holder v. Holder*, 305 F.3d 854 (9th Cir. 2002), we vacated a district court's decision issuing a *Colorado River* stay because "the proceedings [we]re not 'parallel,' as required for a stay under *Colorado River*, nor w[ould] an adjudication . . . on the merits *resolve all necessary issues*." *Id.* at 868 (citations omitted) (emphasis added).  We have repeated similar language in other cases.  *See Montanore Minerals*, 867 F.3d at 1170; *R.R. St.*, 656 F.3d at 983; *Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1033 (9th Cir. 2005).

Here, the United States' suits in state and federal court contain the same three CEQA causes of action.  These claims mainly relate to how the Board analyzed various items of evidence in arriving at its conclusions in the Amended Plan, and how the Board described details about the Amended Plan, in light of this analysis.  For example, the United States alleges that "[t]he Board fails to adequately analyze the impacts of the reservoir controls it imposes on the New Melones Project by including them as modeling assumptions in its impacts analysis."  The United States makes the exact same allegation in its state complaint.

The amended federal complaint additionally contains the intergovernmental immunity cause of action.  The United States claims that, "[b]y imposing on [the Bureau of] Reclamation, in its operation of a federal reclamation project authorized by Congress, a more stringent salinity requirement . . . , the Board Amendments discriminate against the Federal Government."  The United States alleges that such purported discrimination "violates the Supremacy Clause of the United States Constitution."

We recognize that the situation in *Holder* is not exactly analogous to the situation in this case.  *Holder* involved a divorce and custody dispute.  *Holder*, 305 F.3d at 861.  The

husband initiated divorce and custody proceedings in state court.  *Id.*  After the husband and wife came to a mediated agreement on child custody in state court, the husband filed a federal suit, asserting that the wife violated the Hague Convention on the Civil Aspects of International Child Abduction (Hague Convention).  *Id.* at 862.  The federal district court stayed the case while the state court proceedings were on appeal.  *Id.*

We held that the Hague Convention question was distinct from the divorce and custody proceedings in state court.  *Id.* at 868–69.  We additionally noted that: (1) the husband chose to file his Hague Convention claim in federal court, *see id.* at 869; and (2) the state court likely did not have jurisdiction over the Hague Convention claim anyway, *see id.* at 869 n.5.  For these reasons, we vacated the district court's stay.  *Id.* at 873.  Similarly, in *Intel Corporation*, we reversed a *Colorado River* stay where there were no overlapping claims.  *See Intel Corp.*, 12 F.3d at 911–13.  Thus, in both *Holder* and *Intel Corporation*, the state and federal suits had distinct claims.

In contrast, here, three of the four claims in the federal suit are identical to the claims in the state action.  In such a situation, district courts within our circuit have issued partial stays.  For example, in *In re Countrywide Financial Corporation Derivative Litigation*, 542 F. Supp. 2d 1160 (C.D. Cal. 2008), both the state and federal cases contained substantially similar causes of action involving breach of fiduciary duties.  *Id.* at 1170.  In the federal case, the plaintiffs additionally pleaded federal securities violations.  *Id.* at 1167.  The district court overruled the plaintiffs' objection that a partial *Colorado River* stay was not permissible.  Though citing our language in *Holder* and *Intel Corporation*, the district court declared that the plaintiffs

were "excerpting from [these] cases out of context" and that "[t]hese cases say nothing about the staying of a claim that can be fully resolved in state court." *Id.* at 1171. Additionally, the *Countrywide* court relied on the fact that the federal courts have exclusive jurisdiction over the federal securities claims that distinguished the plaintiffs' federal suit from the state suit. *See id.* at 1172.

Similarly, in *Krieger*, upon which the district court in this case also relied, a district court granted a partial *Colorado River* stay. *See Krieger*, 776 F. Supp. 2d at 1060–64. Like in *Countrywide*, the *Krieger* court stayed state law claims that overlapped with litigation in Delaware state court. *Id.* However, the *Krieger* court permitted the federal securities claim to proceed, at least in part because the Delaware state court had no jurisdiction over the federal law claim. *Id.* at 1058–60.

The district courts in *Countrywide* and *Krieger* did not fully consider our repeated admonitions that a *Colorado River* stay should be implemented only when the state proceeding will resolve "all of the parties' claims." *Intel Corp.*, 12 F.3d at 915. We recognize the different posture of *Holder* and *Intel* as compared to *Countrywide*, *Krieger*, and the instant case. However, our continued reliance on that broad language about the state court proceeding resolving the entirety of the litigation before the federal court— language from multiple precedential opinions, *see, e.g.*, *Colo. River*, 424 U.S. at 817; *R.R. St.*, 656 F.3d at 983; *Intel*

*Corp.*, 12 F.3d at 913—means that a partial *Colorado River* stay generally is not permissible.[4]

A partial stay does not further the basic purpose of the *Colorado River* doctrine.    The doctrine exists for the "conservation of judicial resources."  *Colo. River*, 424 U.S. at 817 (citation and internal quotation marks omitted).  "We require a parallel suit to ensure 'comprehensive disposition of litigation.'  Otherwise, a stay or dismissal will neither conserve judicial resources nor prevent duplicative litigation."  *R.R. St.*, 656 F.3d at 982 (quoting *Colo. River*, 424 U.S. at 817).  A partial stay might conserve some resources, in that the district court would not have to adjudicate some of the issues.  However, even with a partial stay, a district court would have to resolve a case.  The district court still has to decide procedural and administrative issues.  In contrast, when a full stay is issued pursuant to *Colorado River*, all activity in a case ceases. The district court has nothing to do unless and until that stay is lifted.

The *Krieger* court did call to attention one concern with not allowing partial stays.  That court noted that if a party adds an additional claim to its federal suit, the party could avoid a *Colorado River* stay.  The *Krieger* court did not want to "encourage plaintiffs to add [new federal] claims solely for the purpose of securing a separate federal forum and avoiding consolidation with previously filed state court actions."  *Krieger*, 776 F. Supp. 2d at 1060.  In other words, a party could get around *Colorado River* and engage in forum shopping simply by adding a new and different claim to the federal suit.  This concern is heightened when the party

---

[4] If a district court dismisses the additional claim on another basis, and only claims that overlap with the state proceeding remain, a *Colorado River* stay could still issue.

could have raised that additional claim in the state litigation, *i.e.*, where there is concurrent jurisdiction over the claim added to the federal suit.

Our precedent takes this potential for gamesmanship into account. Indeed, the seventh factor in our *Colorado River* test is "the desire to avoid forum shopping." *R.R. St.*, 656 F.3d at 979. "In the *Colorado River* context, [we have] held that forum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules." *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1371 (9th Cir. 1990). "If [the party] pursued suit in a new forum after facing setbacks in the original proceeding, this factor may weigh in favor of a stay." *Montanore Minerals*, 867 F.3d at 1169 (citation and internal quotation marks omitted). However, "[i]t typically does not constitute forum shopping where a party acted within his rights in filing a suit in the forum of his choice." *Seneca Ins.*, 862 F.3d at 846 (internal quotation marks and citation omitted); *see also Holder*, 305 F.3d at 869 (deeming it important that granting a stay "would deprive [the husband] of his choice of forum" because the husband chose to file his Hague Convention claim in federal court).

The court also considers a lapse in time in determining whether a party has engaged in forum shopping. For example, when a party waits three-and-a-half years, *see Nakash*, 882 F.2d at 1417, or two-and-a-half years, *see Am. Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1259 (9th Cir. 1988), after initially filing in state court, that can weigh in favor of a stay.

There is a strong presumption that the presence of an additional claim in the federal suit means that *Colorado River* is inapplicable. However, because of the concern over

forum shopping, there might be rare circumstances in which a district court could properly issue a partial *Colorado River* stay. If there is clear-cut evidence of forum shopping—meaning the party filing the federal suit clearly added a new claim to avoid state court adjudication—then the district court may analyze the claims separately and decide if a partial stay is appropriate. When there is concurrent federal and state court jurisdiction over the additional claim (as opposed to exclusive federal jurisdiction), there is stronger evidence of forum shopping, as the plaintiff in the federal case could have pursued that additional claim in state court.[5]

The fact that the United States did not plead its intergovernmental immunity claim in its initial federal complaint gives us some pause. The United States filed its initial complaints on March 28, 2019 in state and federal court. The United States amended its federal complaint—adding the intergovernmental immunity claim—on June 19,

---

[5] It might also be appropriate to stay a federal suit with a claim not included in the state suit where that additional claim replicates the state claim, but under a federal cause of action. For example, if state and federal law have overlapping negligence statutes with identical standards, those state and federal claims would be functionally the same, *i.e.*, would have "substantial similarity," *Seneca Ins.*, 862 F.3d at 845, even if technically pleaded under separate causes of action. We "avoid engaging in different analyses for related claims in a single action, because such an approach 'would increase, not decrease, the likelihood of piecemeal adjudication or duplicative litigation,' undermining the *Colorado River* doctrine." *Montanore Minerals*, 867 F.3d at 1171 (citation omitted). Thus, when the additional claim is highly related to the overlapping claims, and if the federal plaintiff's federal suit meets the other requirements for a *Colorado River* stay, adjudication of the state suit would resolve all of the issues in the federal case. *See R.R. St.*, 656 F.3d at 983. That, however, is not the case here where the intergovernmental immunity constitutional law claim is not functionally the same as the CEQA administrative law claims.

2019, after the Board filed a motion to dismiss. *See State Water Res. Control Bd.*, 418 F. Supp. 3d at 503. Additionally, the United States likely could have brought its intergovernmental immunity claim in state court, despite the fact that it arises under the federal Constitution. *See Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823 (1990) (noting that "state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States," unless Congress "affirmatively divest[s] state courts of their presumptively concurrent jurisdiction" over federal law claims).

Even with these concerns in mind, however, the United States' actions do not constitute the type of forum shopping necessary to justify a *Colorado River* stay pursuant to our precedent. The United States filed its state and federal suits on the same day. The United States informed both courts of the other suit. From the beginning, the United States apprised the California state court of its "preferred choice of a federal forum to resolve its claims," including the state law CEQA claims. We must respect the United States' choice to file suit in federal court. *See Holder*, 305 F.3d at 869.

The United States does not appear to be seeking refuge in federal court to avoid an impending loss in state court. Unlike in *Nakash*, where the federal plaintiff "ha[d] become dissatisfied with the state court," *Nakash*, 882 F.2d at 1417, the United States has nothing with which to be dissatisfied. At the time of the district court's decision, there were no adverse rulings against the United States in state court. *See State Water Res. Control Bd.*, 418 F. Supp. 3d at 503. Additionally, while there was some delay before the United States added its intergovernmental immunity claim to its federal suit, that delay of less than three months is far shorter than the years-long delays in other cases where we affirmed

*Colorado River* stays.  *See Nakash*, 882 F.2d at 1417; *Am. Int'l Underwriters*, 843 F.2d at 1259.  Thus, any evidence of forum shopping by the United States does not overcome the presumption that a partial stay is inappropriate.  This case is not one of those rare circumstances where forum shopping outweighs a district court's obligation to "exercise the jurisdiction given" to it.  *Colo. River*, 424 U.S. at 817.

"Parallelism is necessary but not sufficient to counsel in favor of" a *Colorado River* stay.  *Seneca Ins.*, 862 F.3d at 845.  That necessary condition is absent here.  Without a showing of forum shopping on the part of the United States, the district court could not separate the state and federal law claims for its *Colorado River* analysis.  That the California Superior Court might also adjudicate *some* of the United States' claims is not reason enough to stay those particular claims in federal court.

Additionally, the eighth factor is "dispositive" in concluding that a stay of the entire case is not appropriate.  *Intel Corp.*, 12 F.3d at 913.  The state proceeding cannot resolve the United States' intergovernmental immunity claim because the United States has not raised such a claim in that forum.  The district court could not have had "full confidence that the parallel state proceeding will end the litigation."  *Id.* (citation and internal quotation marks omitted).  "Since we find that there exists a substantial doubt as to whether the state court proceedings will resolve all of the disputed issues in this case, it is unnecessary for us to weigh the other factors included in the *Colorado River* analysis."  *Id.* at 913 n.7.  The district court abused its discretion when it granted a *Colorado River* stay.

The United States presented claims to the federal district court over which that court has jurisdiction.  *See* 28 U.S.C. § 1345.  "Generally, as between state and federal courts, the

rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . .'" *Colo. River*, 424 U.S. at 817 (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Id.* *Colorado River* exempts federal courts from this obligation in "exceptional" circumstances. *Id.* at 818. This is not such a circumstance. The district court must allow the United States' suit to proceed with its full panoply of claims.[6]

## IV. *Pullman* **Abstention**

The Board argues that "*Pullman* abstention provides an alternative ground to uphold the district court's stay." "So long as the appellee does not seek to 'enlarge' the rights it obtained under the district court judgment, or to 'lessen' the rights the appellant obtained under that judgment, [the] appellee need not cross-appeal in order to present arguments supporting the judgment." *Rivero v. City & Cnty. of San Francisco*, 316 F.3d 857, 862 (9th Cir. 2002) (citation omitted). The appellee may ask this court to affirm based on any evidence in the record. *See Jennings v. Stephens*, 574 U.S. 271, 276 (2015).

Pursuant to the *Pullman* abstention doctrine, "federal courts have the power to refrain from hearing cases . . . in which the resolution of a federal constitutional question

---

[6] Assuming that the CEQA litigation continues in state court, we remind the parties and the district court that "whichever court were to first reach a judgment on the merits, that judgment would most likely have conclusive effect on the other court." *Madonna*, 914 F.2d at 1369; *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 54 U.S. 280, 293 (2005) ("Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law.").

might be obviated if the state courts were given the opportunity to interpret ambiguous state law." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716–17 (1996) (citing *Pullman*, 312 U.S. 496). Thus, *Pullman* requires that the federal court abstain from deciding the *federal* question while it awaits the state court's decision on the state law issues. *See, e.g.*, *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 806–07 (9th Cir. 2001) ("Because the relief sought by the Appellants . . . may be available under Washington law, we conclude that the district court should not have decided the merits of the federal constitutional claims presented in this complaint.").

The district court did not stay the federal constitutional claim here. The district court only "stay[ed] the CEQA claims in this case." *State Water Res. Control Bd.*, 418 F. Supp. 3d at 519 (footnote omitted). The district court additionally declined to abstain pursuant to *Pullman*. *See id.* at 512–15.

The Board incorrectly claims that "the relief would be similar: a stay of the case while the state court resolves the CEQA claims, followed by a return to federal court to decide the constitutional claim, if necessary." If the district court had abstained pursuant to *Pullman*, it would not have allowed the intergovernmental immunity claim to proceed. The Board, which did not cross-appeal, cannot ask this court to affirm on *Pullman* grounds because we would necessarily have to stay the intergovernmental immunity claim. Such a ruling would "'enlarge' the rights [the Board] obtained under the district court judgment." *Rivero*, 316 F.3d at 862 (citation omitted). Thus, we cannot affirm the district court on the basis of *Pullman* abstention.

## V.  CONCLUSION

We hold that the district court abused its discretion in granting a partial *Colorado River* stay.  Partial stays pursuant to *Colorado River* are permissible only in very limited circumstances, namely when there is strong evidence of forum shopping.  With little evidence of forum shopping here, the district court erred.  On remand, the district court should allow all of the United States' claims to proceed, subject to regular issues of justiciability.

**REVERSED AND REMANDED.**